COMMONWEALTH *vs.* BENJAMIN F. POWERS, JR. No. 94-P-1368. August 30, 1995. *Search and Seizure*, Probable cause. *Constitutional Law*, Search and seizure. *Probable Cause.*

There were deficiencies under the *Aguilar-Spinelli* standards[1] in some of the inculpatory facts furnished to police authorities by confidential infor-

---

[1] *Aguilar* v. *Texas*, 378 U.S. 108, 113-115 (1964), and *Spinelli* v. *United States*, 393 U.S. 410, 415-416 (1969). See also *Commonwealth* v. *Upton*, 394 Mass. 363, 374-376 (1985).

mants, but police investigation, including a controlled "buy," added information that a magistrate considered sufficient to establish probable cause and to justify the issuance of a warrant to search a private home in Monterey, as well as several named persons, including the defendant, and the defendant's 1990 yellow Cadillac. A judge of the Superior Court thought otherwise and allowed a motion to suppress evidence seized January 9, 1993, on the strength of the warrant. The Commonwealth, with leave of a single justice of the Supreme Judicial Court, lodged an interlocutory appeal conformably with Mass.R.Crim.P. 15(b) (2), 378 Mass. 884 (1979), and G. L. c. 278, § 28E. We reverse the order of suppression.

There were two confidential informants, described in the customary fashion as CI-1 and CI-2 by the State trooper who prepared the affidavit in support of a search warrant. CI-1 had achieved status as a reliable informant (the "veracity" prong) by assisting the authorities in cases that had led to a considerable string of convictions. See *Commonwealth* v. *Byfield*, 413 Mass. 426, 431 (1992); *Commonwealth* v. *Luce*, 34 Mass. App. Ct. 105, 108 (1993). He had bought cocaine on several occasions from the defendant Powers, but those purchases had occurred more than a year before, and the information, therefore, was to be disregarded as stale. See *Commonwealth* v. *Atchue*, 393 Mass. 343, 349 (1984); *Commonwealth* v. *Malone*, 24 Mass. App. Ct. 70, 73 (1987). Within ten days of the application for the warrant, CI-1 had purchased cocaine from Howard "Boo-Boo" Price, who lived in Monterey. According to CI-1, Price was part of a cocaine ring that included Adam Phillips, known as "Doc Rock," who lived at Lee Side Lodge on route 57 in Monterey. The ring included Judy, a woman friend of Phillips, who made deliveries of cocaine to customers in Great Barrington. CI-1 said that Price, Phillips, and Judy received their supplies of cocaine from Benny Powers (the defendant) but the provenance of that information is not apparent from the affidavit, rendering it inadequate (as we shall explicate) so far as the "basis of knowledge" prong was concerned.

CI-2 had assisted the police in several controlled buys of drugs, a history to which the affiant refers to establish the reliability of this second informant. None of CI-2's collaborations with the authorities, however, was described in the affidavit as having led to convictions or the seizure of contraband. Consequently, the government's assertion that CI-2 had passed the veracity test is a bit tenuous. See *Commonwealth* v. *Luce*, 34 Mass. App. Ct. at 108-109. CI-2 demonstrated knowledge about the apartment and the drug-selling operations of "Doc Rock" Phillips at the Lee Side Lodge. He had bought cocaine from Phillips four times during the month preceding the affidavit and within four days had made a controlled buy from Phillips. The buy took place at "Boo Boo" Price's nearby house in Monterey, which was up a dirt road from route 57. CI-2 said Phillips was supplied by Benny Powers, known on the street as the "Fat Man," who lives in Florida, drives a Cadillac, and who has, on several occasions, trans-

ported cocaine from Florida to Berkshire County. At the time of the most recent controlled buy, the affiant observed a yellow 1990 Cadillac with Florida plates parked in the Price driveway.

On January 6, 1993, and January 8, 1993, the police checked out the driveway of Price's place and observed the yellow Cadillac with Florida plates parked there. They performed a license plate check and learned the car was registered to Powers. It was known to the police that Powers had been convicted in 1988 of trafficking in cocaine in Sheffield. We may take it as a given that CI-2 and CI-1 were deficient in their basis of knowledge, at least so far as appeared from the affidavit, about Powers supplying cocaine from Florida to Phillips and Price and that CI-1's purchases from Powers were too long ago to be useful. Although the affidavit was good as to Phillips and Price (between the two informants, solid basis of knowledge and reliability), as to Powers there is no explanation of how (other than by hearsay) the informants acquired their information. See *Commonwealth* v. *Allen*, 406 Mass. 575, 578 (1990); *Commonwealth* v. *O'Brien*, 30 Mass. App. Ct. 807, 809 (1991).

Police investigation, however, may add those pieces of the picture which are missing from what police have obtained from confidential informants. *Commonwealth* v. *Parapar*, 404 Mass. 319, 321-322 (1989). *Commonwealth* v. *Luce*, 34 Mass. App. Ct. at 110. Here, the link between Powers, a Florida connection, and Phillips and Price was borne out by the consistent presence of Powers's automobile in the driveway of a somewhat secluded house where, to the knowledge of the police (because of the controlled buy by CI-2), drug transactions were being concluded. See *Commonwealth* v. *Carrasco*, 405 Mass. 316, 322 (1989) (presence at the location of a suspected drug transaction of an Oldsmobile automobile which an informant had identified ruled corroborative). Compare *Commonwealth* v. *Frazier*, 410 Mass. 235, 240 (1991) (presence of defendant's car did not enhance an informant's tip when there was no evidence of drug traffic in the premises under observation).

Here, the picture as to Powers became sufficiently complete when the information from CI-1 and CI-2, the observations by the police of the yellow Cadillac, and the information they had gathered concerning that car were added together. It is probable cause, not proof beyond a reasonable doubt, that the police are required to have. As we had occasion to say in *Commonwealth* v. *Luce*, 30 Mass. App. Ct. at 110, "What *Aguilar-Spinelli* requires is not the filling of pigeonholes but an affidavit which states information upon which a neutral and detached magistrate may make a determination of probable cause." The aggregated material in this case furnished that information.

With probable cause to search the defendant inside the target residence, the police officers could lawfully search him as he left those premises in the face of the oncoming search team. The police at that stage were not required to ignore the possibility that the defendant was about to drive off

with the evidence. See *Commonwealth* v. *Ortiz*, 376 Mass. 349, 356 (1978). Cf. *Commonwealth* v. *Huffman*, 385 Mass. 122, 125 (1982); *Commonwealth* v. *Martino*, 412 Mass. 267, 276 (1992).

The order allowing the defendant's motion to suppress is reversed, and the matter is remanded to the Superior Court for further proceedings.

*So ordered.*

*Joseph A. Pieropan*, Assistant District Attorney, for the Commonwealth.

*William A. Rota* for the defendant.