COMMONWEALTH *vs.* CHEVASSE WHITE.

Suffolk. May 6, 2008. - August 11, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Firearms. Evidence,* Firearm, Identification. *Identification. Practice, Criminal,* Instructions to jury.

At a criminal trial, the evidence was sufficient to convict the defendant of unlawful possession of a firearm, in violation of G. L. c. 269, § 10 (*a*), where a jury reasonably could infer that the defendant had placed a gun (later recovered by police) in an air vent located in the hallway of a car wash while the defendant was in the hallway. [135-136] BOTSFORD, J., dissenting, with whom MARSHALL, C.J., joined.

The judge at a criminal trial erred in failing to instruct the jury on the possibility of good faith error in identification, where the accuracy of an eyewitness's identification was at issue, and where the defendant requested such an instruction; however, the error did not create a substantial risk of a miscarriage of justice, where the jury were not deprived of the option of finding that the witness was honest but mistaken in her identification. [137-139]

INDICTMENT found and returned in the Superior Court Department on June 26, 2001.

The case was tried before *Charles T. Spurlock*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Debra S. Krupp*, Committee for Public Counsel Services, for the defendant.

*Macy Lee*, Assistant District Attorney, for the Commonwealth.

COWIN, J. A jury in the Superior Court convicted the defendant, Chevasse White, of unlawful possession of a firearm in violation of G. L. c. 269, § 10 (*a*).[1] He appealed, claiming that the evidence was insufficient to support the conviction and that

---

[1]The defendant was also charged with assault by means of a dangerous weapon in violation of G. L. c. 265, § 15B (*b*), and unlawful possession of ammunition in violation of G. L. c. 269, § 10 (*h*). At the close of the Commonwealth's case, the judge granted the defendant's motion for a required finding of not guilty on the charge of assault by means of a dangerous weapon. The defendant was acquitted of the charge of unlawful possession of ammunition.

the trial judge erred in failing to instruct the jury on good faith error in identification. In an unpublished memorandum and order issued pursuant to its rule 1:28, the Appeals Court reversed, concluding that there was insufficient evidence connecting the defendant to a gun recovered at the crime scene. *Commonwealth v. White*, 70 Mass. App. Ct. 1104 (2007). We granted the Commonwealth's application for further appellate review, and we affirm the judgment of the Superior Court.

*Background.* The charges against the defendant arose in connection with an apparent gun battle outside a building in the Jamaica Plain section of Boston that housed a laundromat and a car wash. Since sufficiency of the evidence is in issue and affects the challenged instruction as well, we summarize the trial testimony. An eyewitness, Alice McLaughlin, who was standing across the street from the building, heard numerous gunshots coming from the area of the car wash and saw people "diving on the ground, running for cover, hiding behind things." When the gunfire had died down, she saw two young black men in front of the laundromat. One of the men was holding a gun that she saw him put in the waistband of his pants. She described this man as wearing a "black Fubu[2] jacket with white lettering on it."[3] The men then walked toward the rear of the laundromat and car wash. At the time she saw the man with the gun, the witness was approximately twenty-five feet from the men, and her view of them was unobstructed.

Officer Edwin Guzman and his partner arrived at the scene in the immediate aftermath of the gunfire. They had been traveling on Washington Street in a police cruiser when they observed a man outside the car wash crouching down, nervously trying to signal them. When they stopped, the man told them that a shooting had just taken place and that the persons involved had run to the rear of the car wash. Guzman reported the shooting to the police operations division, and he and his partner headed on

The indictment for unlawful possession of a firearm was initially charged as a second or subsequent offense, see G. L. c. 269, § 10 (*d*); however, the Commonwealth elected not to proceed as to the second offense portion of that charge.

[2]The record does not disclose what a "Fubu jacket" is, but apparently it has the letters "FB" on it.

[3]The defendant was wearing a black Fubu jacket when he was arrested at the scene. See *infra*.

foot in the direction in which the men had fled. When they got to the rear of the car wash, they encountered the defendant and his cousin coming out of an exit door. The door was at the end of a narrow hallway that ran the length of the building.

The defendant was wearing a black jacket with the letters "FB" on the back. A pat-down of the defendant revealed that he was unarmed. The defendant and his cousin were brought to the front of the car wash, where McLaughlin, who by then had been interviewed by another officer, identified the man with the Fubu jacket as the man she had seen with the gun.[4]

Approximately twenty minutes later, a working firearm was recovered from an air vent in the hallway from which the defendant and his cousin had exited. Another working firearm was found on a street near the car wash. No fingerprints were recovered from the weapons, however, and none of the bullets, bullet fragments, or shell casings from the scene could be linked to either weapon.

The defendant did not testify; the only defense witness was his mother, who explained that the defendant was living with her at the time of the incident and that he and his cousin had gone to the car wash that day. In her opening statement and closing argument, defense counsel contended that McLaughlin was mistaken in believing that the defendant had a gun and that the police had failed to investigate the incident thoroughly.

*Discussion. 1. Sufficiency of the evidence.* In reviewing a claim of insufficient evidence, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia,* 443 U.S. 307, 318-319 (1979). Circumstantial evidence is competent to establish guilt beyond a reasonable doubt, *Commonwealth* v. *Marshall,* 434 Mass. 358, 361 (2001), and reasonable inferences may be drawn from the evidence. *Commonwealth* v. *Reaves,* 434 Mass. 383, 389-390 (2001).

---

[4]At trial, although McLaughlin identified the Fubu jacket the defendant had been wearing, she did not identify the defendant. She only recounted her identification of him at the scene. See *Commonwealth* v. *Torres,* 367 Mass. 737, 739 (1975) (evidence of pretrial identification "should be given probative value" even where no identification is made at trial).

To sustain a conviction under G. L. c. 269, § 10 (*a*), the Commonwealth must prove that the defendant knowingly possessed a firearm without either being present in his residence or place of business or having in effect a license to carry firearms or a firearm identification card.[5] The Commonwealth must prove that the gun the defendant possessed met the definition of a working firearm set forth in G. L. c. 140, § 121, that is, that it had a barrel less than sixteen inches long and was capable of discharging a bullet. G. L. c. 269, § 10 (*a*). Since McLaughlin did not describe the gun (and thereby potentially establish that the barrel was of the requisite length) or see the defendant fire it (and thereby potentially establish that it was capable of firing), the defendant could not be convicted unless the evidence was sufficient to establish that he had possessed one of the firearms recovered from the scene and later tested by the Commonwealth.

The evidence, and the reasonable inferences to be drawn therefrom, were sufficient to convict the defendant. An eyewitness observed a man, later identified as the defendant, holding a gun; the same man was seen coming from the hallway of the car wash, without the gun; a gun was discovered shortly thereafter in the area from which the defendant had recently emerged. A jury could reasonably infer that the defendant had placed the gun in the air vent while he was in the hallway. It is true that other inferences could be drawn from this evidence, for example, that the gun was placed in the air vent at some earlier date, or that someone other than the defendant placed it there during or immediately after this incident. However, "[a]n inference drawn from circumstantial evidence 'need only be reasonable and possible; it need not be necessary or inescapable.' " *Commonwealth* v. *Bush*, 427 Mass. 26, 30 (1998), quoting *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977). The Appeals Court correctly noted that a conviction may not rest upon "the piling of inference upon inference or conjecture and speculation." *Commonwealth* v. *Armand*, 411 Mass. 167, 170 (1991). However, we disagree with the Appeals Court's conclusion that this is such a case. We do not require that every inference be premised on an independently proven fact. *Commonwealth* v. *Dostie*, 425 Mass. 372, 375-376 (1997). The inference here is reasonable.

---

[5] Whether the defendant possessed a license or firearm identification card is not at issue in this case.

2. *Jury instruction.* Because of its conclusion on the sufficiency of the evidence, the Appeals Court did not reach the issue whether the judge's failure to instruct the jury on the possibility of good faith error in identification, see *Commonwealth v. Pressley*, 390 Mass. 617, 619 (1983), was reversible error.[6] We conclude that while the failure so to instruct was error, a new trial is not required.

We agree that the defendant was entitled to the instruction. There was evidence that the defendant came out of the hallway next to the car wash, and there was evidence that a firearm was recovered from that hallway. The central issue regarding the instruction was the accuracy of McLaughlin's observation that it was the defendant whom she saw with a gun in his hand. While the focus of the cross-examination of McLaughlin was somewhat unclear, we construe that questioning as attacking the accuracy of the identification. Defense counsel stated in her closing argument, "Just because you're certain doesn't mean you're right. [McLaughlin] was so certain but she was wrong." Between the cross-examination and the closing, it is plain that the accuracy of the identification was at issue. This is not a case where, for example, the defendant was known to the witness, thus requiring a conclusion that the witness was either accurate or was lying. See *id.* Here, the witness could well have believed she was correct, but her belief might have been mistaken. The *Pressley* instruction was requested and the failure to give it was error.

To determine the consequences of that error, we consider whether the issue was properly preserved for appellate review. Specific requests for jury instructions must be brought clearly to the judge's attention, see *Commonwealth v. Thompson*, 23 Mass. App. Ct. 114, 116 (1986), so that the judge has an opportunity to correct any error before the jury retire to deliberate. See *Commonwealth v. Matos*, 394 Mass. 563, 565 (1985). This avoids the necessity of a new trial to correct an error that could have been

---

[6]In *Commonwealth v. Pressley*, 390 Mass. 617, 618 (1983), a robbery victim testified that she had identified the defendant, who was her neighbor, but that she had later recanted the identification. We held that where identification is at issue, a defendant is entitled, on request, to a jury instruction that a witness's identification may be honest but mistaken. *Id.* at 619-620. Such an instruction should be given "when the facts permit it and when the defendant requests it." *Id.* at 620.

avoided in the first instance. *Commonwealth* v. *Keevan*, 400 Mass. 557, 563 (1987).

In this case, the defendant presented a written request for jury instructions at the end of the trial. In a conference with counsel, the judge reviewed the list of requested instructions, indicating whether he would give each one. When he reached the requested instruction on good faith error in identification (the *Pressley* instruction), the judge stated, "Well, I'm not going to give it *in the terms that you've typed it up* on number 6, mistaken identification and identification witness certainty" (emphasis added). The judge's comments indicated that he intended to give the *Pressley* instruction, but in a form different from the one requested by the defendant. See *Commonwealth* v. *Torres*, 420 Mass. 479, 484 (1995) (no particular form of words required for jury instruction so long as instruction given adequately explains legal concepts). He continued, "I'm not going to give [the jury] failure to conduct tests or follow procedures because [the Commonwealth's witnesses] indicated tests were done but nothing came of those results." At the end of the conference, defense counsel said, "In terms of the failure to conduct tests, I just would like to note my objection for the record," implying that she believed the judge intended to give the *Pressley* instruction in some form. When the judge charged the jury, however, he omitted the *Pressley* instruction altogether. At the close of the charge, defense counsel did not object to the omission but rather pronounced herself content with the instructions.

In general, our cases have held that if a party brings to the judge's attention a specific written request for instruction, and the judge denies the request or gives an instruction inconsistent with the requested one, we consider the issue preserved, and the party need not object a second time after the instructions are given. See, e.g., *Commonwealth* v. *Prater*, 431 Mass. 86, 97 (2000); *Commonwealth* v. *James*, 424 Mass. 770, 786 n.25 (1997); *Commonwealth* v. *Biancardi*, 421 Mass. 251, 253-254 (1995). See also Mass. R. Crim. P. 24 (b), 378 Mass. 895 (1979). In such circumstances we consider whether there is "no reasonable prospect . . . that, on objection, the judge would have repudiated his position." *Commonwealth* v. *Biancardi*, *supra* at 254. That was not the case here. When the judge stated that he would not give

the *Pressley* instruction "in the terms that you've typed it up," he indicated clearly that he intended to give the substance of the instruction. When the judge did not give the instruction at all, it was entirely likely that the omission was inadvertent and that the judge would have rectified the error had it been brought to his attention. Cf. *Commonwealth* v. *Matos, supra* at 565. The defendant should have brought the omission to the judge's attention by objecting at the end of the charge. She did not; therefore, the objection was not preserved, and our review is for a substantial risk of a miscarriage of justice. *Commonwealth* v. *Keevan, supra* at 564.

We discern no such risk here. While the evidence against the defendant was far from overwhelming, we are not convinced that the error was "of a type and seriousness which should lead us to reverse in the absence of a proper exception." *Id.,* quoting *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). The instructions that the judge gave on witness credibility and identification testimony were correct and properly emphasized the Commonwealth's burden of proof. Considering the instructions as a whole, see *Commonwealth* v. *Walker,* 421 Mass. 90, 100 (1995), we conclude that the jury were not deprived of the option of finding that the witness was honest but mistaken when she identified the defendant as the man she had seen with a gun in his hand.

The circumstances of the identification in this case are similar to those in *Commonwealth* v. *Rosado,* 428 Mass. 76 (1998), in which the judge also erroneously omitted a *Pressley* instruction. We affirmed the judgment in that case, concluding that the error had been preserved but was not prejudicial. *Id.* at 81. There, as here, an eyewitness who had seen the defendant from a short distance during daylight hours identified him at the scene a short time later, indicating that he recognized the defendant by an article of clothing. *Id.* at 77-78. As stated, the standard of review in the present case is less favorable to the defendant. Given that the error was not prejudicial in *Rosado,* even more so the same error does not create a substantial risk of a miscarriage of justice here.

*Judgment affirmed.*

BOTSFORD, J. (dissenting, with whom Marshall, C.J., joins). I agree with the Appeals Court that the evidence in this case was not sufficient to support the defendant's conviction of unlawful possession of a firearm. Accordingly, I dissent.

The majority presents an accurate recitation of the evidence introduced at trial. I also accept the majority's statement of the legal standard, set out in *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), governing the defendant's claim of insufficient evidence, and the proposition that circumstantial evidence may be used to establish guilt beyond a reasonable doubt. *Ante* at 134-135. However, as the Appeals Court noted, inferences must be based on more than conjecture, and in some key respects, the evidentiary record does not support with adequate facts the inferences that would be necessary to draw in order to find the defendant guilty. In particular, there was no evidence presented about the use or, more to the point, limits on the car wash hallway where the gun in question was found. What the evidence does indicate is that the hallway had unlocked doors to the outside, was accessible to the patrons of the car wash, and — important because the defendant was seen first at the front of the car wash and later was seen coming out of the rear of that hallway, with no suggestion that he had a car being washed — to the public generally. Moreover, the gun was found behind a grated air vent in the hallway, discovered by a police officer conducting a focused search with a flashlight; it clearly was not resting in a visible location, to be noticed by anyone walking through. And finally, that gun could not be linked to the shooting incident that had taken place a short time before at the front of the car wash, although, as the court notes, *ante* at 134, the witness Alice McLaughlin first saw the defendant with what she thought was a gun immediately after the shooting incident subsided. I agree with the Appeals Court that, in these circumstances, no juror rationally could have found beyond a reasonable doubt that the gun in question was secreted in the vent after the shooting, rather than at some unidentified time before, or that the defendant, and not some other person with access to the open hallway, had placed the gun there. It is of course possible to draw an inference linking the defendant to the gun, but it requires speculation to do so. It is improper for a jury to "use conjecture and guesswork to choose between alternative

inferences." *Commonwealth* v. *Dostie*, 425 Mass. 372, 376 (1997). See *Commonwealth* v. *Frongillo*, 66 Mass. App. Ct. 677, 680 n.8 (2006). I respectfully dissent.