MALDONADO, J. (dissenting).
Because I conclude that the evidence of fifty-six dollars found in the defendant's possession and two "twists" of cocaine, valued *761 between forty and sixty dollars, discovered in the hands of the driver of the car the defendant was seen entering and leaving, fails to substantiate, without more, that the defendant distributed drugs, even with the additional expert testimony regarding the usual modus operandi of narcotic exchanges in South Lawrence Common Park, I respectfully dissent.
One early April afternoon in South Lawrence Common Park, police, while stationed in an unmarked cruiser, observed the defendant enter the passenger's side of a car displaying Maine license plates. The car drove about 150 yards; it then stopped and the defendant got out. Neither the defendant nor the operator were known to police, and the police did not overhear any conversations or observe any hand movements or exchanges between the defendant and the operator before the defendant and the car's operator parted company.
The car began to drive away, but the police activated their cruiser's lights and siren, signaling the car's operator to stop the *473 vehicle. The car continued for a short distance before stopping. As the officer approached the stopped vehicle, he observed the operator moving about in the car's interior, and so, for his safety, the officer ordered the operator to step out. The operator exited the vehicle with clenched fists containing two "twists" of cocaine.
Meanwhile, the defendant was walking away on foot. However, he was stopped five minutes later by a second officer, who learned from the first about the cocaine in the hands of the car's operator. The second officer searched the defendant and found fifty-six dollars in unspecified denominations on the defendant's person. There was no testimony that the bills were separated in any particular way.
The remainder of the Commonwealth's proof came from the testimony of a police expert, who testified to the general manner in which narcotics are bought and sold in Lawrence. The expert opined that out-of-State buyers "most common[ly]" do business in Lawrence by arranging to meet a seller of drugs or his "runner," to engage in an exchange during a short "ride to nowhere." The expert also testified that each cocaine twist sells for between twenty and thirty dollars.
The Commonwealth asserts, and the majority agrees, that the expert testimony regarding the usual pattern of narcotics sales in Lawrence, coupled with the discovery of the two twists of cocaine in the operator's possession and fifty-six dollars on the defendant's person is sufficient to support a rational juror in finding beyond a reasonable doubt that the defendant sold drugs to the car's operator. I disagree.
In cases such as this, where, in the absence of direct observations of a narcotics exchange, the Commonwealth relies on generalizations regarding the modus operandi of drug dealers, there must be more corroborative evidence than the mere discovery of a small quantity of cash on the purported dealer's person. See Commonwealth v. Sepheus, 468 Mass. 160, 166, 9 N.E.3d 800 (2014) (concluding that the $312 found on the defendant's person was "not a particularly large sum," and observing that, while "[a] large amount of cash certainly is probative of an intent to distribute[,] ... [i]t is not unusual for law-abiding persons to carry ... [a small] amount on their person").
Examples of cases where the Commonwealth overcame the lack of direct evidence of a drug transaction include the following. In Commonwealth v. Stephens, 451 Mass. 370, 387-388, 885 N.E.2d 785 (2008), where the expert opined that buyers usually arrive at an *474 agreed-upon location before the seller, and get into the *762 seller's vehicle to make the exchange, the Commonwealth introduced evidence that police saw the codefendant make furtive movements toward a center console (where approximately $340 worth of cocaine was stored), and the defendant had $345 and drug packaging paraphernalia on his lap and in his pockets when stopped.[1] In another such case, Commonwealth v. Clark, 446 Mass. 620, 624-625, 846 N.E.2d 765 (2006), it was the direct evidence of a prior exchange, in which Clark was observed accepting money in exchange for what was believed to be drugs, that identified Clark as the seller in a later narcotics sale where there was no direct evidence of an exchange.
By contrast, in cases with facts more analogous to the evidence in this case, the Supreme Judicial Court has held the evidence insufficient to support even a finding of probable cause of an intent to distribute. Commonwealth v. Levy, 459 Mass. 1010, 947 N.E.2d 542 (2011), is one such example. There, police saw no exchange, but observed a man make a twenty-second call on a pay telephone commonly used to arrange drug deals. The man then drove to a nearby location, got out of his car, and paced up and down the street before the arrival of a second car, which he entered through the back passenger's side. The car went on a short 200-yard ride before the back seat passenger got out. Police stopped the second car and searched both the driver and the front seat passenger. In the absence of more corroborative evidence, the Supreme Judicial Court held that the search of the front seat passenger lacked probable cause. Id. at 1011-1012, 947 N.E.2d 542. Similarly, in Commonwealth v. Stewart, 469 Mass. 257, 13 N.E.3d 981 (2014), police observed the defendant, a known drug dealer, and several of his companions in a part of Boston's theatre district known for narcotics deals. A woman approached the group counting money. Police then observed the group huddle together, but the police did not observe an exchange of money for drugs. Id. at 259-260, 13 N.E.3d 981. Reasoning that, although there is no requisite "that an officer must actually see an object exchanged, the suspect's movements, as observed by the officer, must provide factual support for the inference that the parties exchanged an object," the Supreme Judicial Court concluded the police lacked probable cause to search the contents of a cigarette *475 box in the defendant's backpack. Id. at 261, 263-265, 13 N.E.3d 981 (quotation omitted).
Here, considering the elevated standard of proof required to sustain a criminal conviction, the inference that the defendant sold drugs simply because he possessed fifty-six dollars and the car's operator possessed two twists of cocaine is even less supportable. Contrary to the Commonwealth's assertions, it is not the defendant's burden to offer an explanation for his presence in the car. See Commonwealth v. Walker, 443 Mass. 213, 223, 820 N.E.2d 195 (2005) ("[T]he burden of proof never shifts to the defendant, ... because he is presumed innocent, and ... all presumptions of law are in favor of innocence"). Rather, the evidence viewed in the light most favorable to the Commonwealth must be sufficient to satisfy a rational juror of the defendant's guilt beyond a reasonable doubt. See Commonwealth v. Latimore, 378 Mass. 671, 677-678, 393 N.E.2d 370 (1979) ("[T]o sustain the denial *763 of a directed verdict, it is not enough ... that there was some record evidence, however slight, to support each essential element of the offense; [there must be] enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt").
In the instant case, the evidence does not permit the inference that the car's operator was a consumer of drugs or that the defendant was the distributor of those drugs. See Commonwealth v. White, 452 Mass. 133, 136, 891 N.E.2d 675 (2008) (inferences must be "reasonable and possible" and not based on mere "conjecture and speculation" [citations omitted] ). Contrast Commonwealth v. Dancy, 75 Mass. App. Ct. 175, 176-179, 912 N.E.2d 525 (2009) (where a woman's immediate consumption of cocaine after interacting with the defendant, and the defendant's possession of three cellular telephones [cell phones] and $536-including one twenty dollar bill found crumpled in a separate pocket-gave rise to the reasonable inference that the woman was a buyer and the defendant was the seller).
While the expert here testified that "most common[ly]" out-of-State buyers come to Lawrence to purchase narcotics, that testimony did not exclude the possibility of the out-of-State operator's coming to Lawrence to sell drugs or for some other nefarious reason. The suggestion that South Lawrence Common Park's location provides easy highway access to out-of-State "buyers" is also equally applicable to an out-of-State operator looking to sell drugs. See, e.g., Commonwealth v. Saletino, 449 Mass. 657, 661-662, 871 N.E.2d 455 (2007) (defendant drove a car with Rhode *476 Island plates when selling cocaine to an undercover officer in Lynn); Commonwealth v. Kimball, 37 Mass. App. Ct. 604, 604-605, 641 N.E.2d 1066 (1994) (although the police conducted an illegal stop, which fatally undermined the defendant's conviction, he was driving a car with Maine plates while trafficking over 200 grams of cocaine in Massachusetts); Commonwealth v. Powers, 39 Mass. App. Ct. 911, 912-913, 654 N.E.2d 338 (1995) (defendant drove a car with Florida plates while dealing drugs in Berkshire County); Commonwealth v. Savageau, 42 Mass. App. Ct. 518, 518-519, 678 N.E.2d 1193 (1997) (defendant convicted of possession with intent to distribute after police saw him deal "crack" cocaine out of a car with New Hampshire plates).
Furthermore, nothing about the automobile operator's possession of the two twists of cocaine distinguishes him as a consumer of drugs rather than a "seller" of drugs. Even though the car's operator did not stop immediately for the police and was observed moving about in the car, there was no evidence of his ingesting drugs, putting his fists towards his mouth in an attempt to ingest drugs, or being in possession of any drug ingesting paraphernalia. Accordingly, his possession is equally consistent with that of a seller of drugs. Contrast Commonwealth v. Dancy, 75 Mass. App. Ct. at 177, 912 N.E.2d 525, where, inter alia, it was a woman's immediate consumption of drugs after parting company with the defendant that distinguished her as the defendant's buyer.
Similarly, the defendant's possession of fifty-six dollars does not, without more, give rise to a reasonable inference that he had just sold drugs. See Commonwealth v. Tripp, 14 Mass. App. Ct. 997, 998, 440 N.E.2d 1286 (1982) (evidence that one person was in possession of eight glassine bags of heroin while another was counting money did not distinguish one individual as the seller or the other as the buyer).
Commonwealth v. Dancy, in particular, provides an example of the extent of corroborative evidence needed to properly support a conviction. There, police observed *764 Dancy meet with a woman who had been anxiously awaiting his arrival. She was pacing up and down the street. The two met briefly and parted company after about one minute. Police next observed the woman ingesting drugs. That case also included expert testimony regarding the clandestine nature of street drug sales and, further, that cocaine sells in "denominations of ten dollars, twenty dollars, and higher." When Dancy was stopped shortly after the woman was observed consuming drugs, he was found in possession of three *477 cell phones and $536, including one twenty dollar bill found crumpled in a pocket separate from the other monies. In that case, as we have noted, the woman's immediate ingestion of cocaine after her brief encounter with Dancy distinguished her as a buyer of drugs, and Dancy's possession of the three cell phones and a large sum of money, with one lone crumpled up twenty dollar bill in a separate pocket (suggesting that it had just been quickly stored away) gave rise to the reasonable inference that he had just sold drugs to the woman. 75 Mass. App. Ct. at 176-179, 912 N.E.2d 525. By contrast, in the instant case, there was no evidence that the defendant had in his possession any, let alone multiple, cell phones, and, aside from the fifty-six dollars falling within the dollar range for a sale of two twists, there was nothing to suggest that the money came from the defendant's sale of drugs to the car's operator. The defendant was not seen getting out of the car with bills in hand or stuffing cash into his pocket. There was no testimony about how the money was pocketed, let alone in a manner that suggested it had just been quickly put away.
The mere possibility that the defendant may have sold drugs on that day is not enough. The evidence must be sufficient to satisfy a rational juror, beyond a reasonable doubt, that the defendant transferred drugs to the car's operator. Commonwealth v. Latimore, 378 Mass. at 677-678, 393 N.E.2d 370. To satisfy that burden, the evidence must exclude any other reasonable hypothesis. See Commonwealth v. LaBriola, 430 Mass. 569, 573-574, 722 N.E.2d 13 (2000). I am not persuaded the evidence here meets that strict burden. In my view, the evidence does not exclude the equally reasonable possibilities that either the two men met for some other reason and there was no sale of drugs in the car on that day, or that the defendant was the purchaser of drugs, which he consumed in the five minutes from when the lights and sirens were activated to when he was stopped.[2] I would therefore reverse the judgments, set aside the verdicts, and order judgments to enter for the defendant.

"The officers found, in [the defendant's] lap, clear plastic bags with the tops knotted and corners cut off, with additional altered plastic bags in his pocket," and an expert explained that "dealers package cocaine in plastic bags by cutting off the corners." Commonwealth v. Stephens, 451 Mass. at 387, 885 N.E.2d 785.

While there was testimony that a police car followed the defendant for about five minutes as he walked away, there was no testimony of police being able to observe the defendant's hands and mouth at all times.