COMMONWEALTH *VS*. EARLE LARO.

No. 06-P-1245.

Suffolk. February 15, 2007. - April 2, 2007.

Present: COHEN, DREBEN, & MEADE, JJ.

*Controlled Substances. "School Zone" Statute.*

The evidence at the trial of a criminal complaint was sufficient to convict the
defendant of distribution of cocaine within 1,000 feet of a school zone,
where a rational jury could have found that the school located eighty-two
feet from where the drug transaction took place was an elementary school
within the meaning of G. L. c. 94C, § 32J. [558-560]

COMPLAINT received and sworn to in the Chelsea Division of
the District Court Department on February 8, 2001.

The case was tried before *Albert S. Conlon*, J.

*Denise M. Regan*, Committee for Public Counsel Services
(*Nona E. Walker*, Committee for Public Counsel Services, with
her) for the defendant.

*Janis DiLoreto Noble*, Assistant District Attorney, for the
Commonwealth.

MEADE, J. This appeal presents the question whether the Com-
monwealth's evidence was sufficient to sustain the defendant's
conviction for distribution of a controlled substance within
1,000 feet of a school zone. Specifically, the defendant chal-
lenges whether there was sufficient evidence that the school in
question was covered by G. L. c. 94C, § 32J. We affirm.

The defendant was charged with distribution of cocaine in
violation of G. L. c. 94C, § 32A, possession of marijuana in
violation of G. L. c. 94C, § 32C, and committing a drug of-
fense within 1,000 feet of a school zone in violation of G. L.
c. 94C, § 32J. At the close of the Commonwealth's case, he
moved for a required finding of not guilty on the school zone

offense. That motion was denied, and a jury found the defendant guilty of all charges.[1] Pursuant to Mass.R.Crim.P. 25(b)(2), 378 Mass. 896 (1979), the defendant moved to set aside the guilty verdict on the school zone offense. That motion was also denied.

*Background.* The evidence most favorable to the Commonwealth established that, on February 7, 2001, at approximately 6:00 P.M., detectives Martin Diliegro and Antonio Arcos of the Revere police department drug control unit observed the defendant in the passenger seat of a parked car with a man named Bettencourt in the parking lot of a convenience store. From their vantage point in a parked car nearby, the detectives watched the defendant sell Bettencourt a plastic bag of cocaine. When the detectives approached the car, and the defendant exited it, Diliegro and Arcos could smell a strong order of marijuana emanating from the car. Marijuana was found in the car and on the defendant's person. The property line of the convenience store in front of which Bettencourt's car was parked was eighty-two feet from the Immaculate Conception School.

The Commonwealth's evidence relating to the school came from three witnesses. Diliegro, a forty-three year resident of Revere who was familiar with the school, testified that he knew it was a school because its name, "Immaculate Conception School," is posted on the front of the building. He had seen children "going to school there everyday during the school year, carrying books[;] crossing guards, mothers picking up their children or dropping them off in the morning, pick[ing] them up in the afternoon." He added that he believed he had also seen school buses there, and he described it as a "parochial" school.

Arcos also described the school as being a "private school" and situated in a residential neighborhood. He was familiar with the school, and traveled by it several times a day. Arcos knew it was a school because he had seen school buses there and crossing guards stationed there in the mornings and in the afternoons. Arcos had also worked a detail inside the school when it hosted a bingo game. Thomas Terranova, Revere's city engineer, was

---

[1] The defendant presents no argument on appeal regarding the distribution of cocaine and possession of marijuana convictions.

also familiar with the Immaculate Conception School. Terranova knew it was a school because his grandchildren had attended it "for three years, and [he] had to pick them up" there.

*Discussion.* When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Velasquez,* 48 Mass. App. Ct. 147, 152 (1999), quoting from *Jackson* v. *Virginia,* 443 U.S. 307, 318-319 (1979). Nor are we obligated to "reread the record from a [defendant]'s perspective." *Palmariello* v. *Superintendent of M.C.I. Norfolk,* 873 F.2d 491, 493 (1st Cir.), cert. denied, 493 U.S. 865 (1989). Rather, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia, supra* at 319. Thus, this standard of review does not permit this court "to make its own subjective determination of guilt or innocence." *Id.* at 319 n.13. See *Stewart* v. *Coalter,* 48 F.3d 610, 616 (1st Cir.), cert. denied, 516 U.S. 853 (1995).

When evaluating sufficiency, the evidence must be reviewed with specific reference to the substantive elements of the offense. See *Commonwealth* v. *Latimore, supra* at 677-678.[2] See also *Jackson* v. *Virginia, supra* at 324 n.16. Here, the defendant does not contest the evidence that supports his conviction for distributing cocaine, but only that he did so in the statutorily defined school zone. The school zone statute provides a mandatory minimum penalty of two years for one convicted of distributing any one of a variety of controlled substances within 1,000 feet of "a public or private accredited preschool, accredited headstart facility, elementary, vocational, or secondary school whether or not in session." G. L. c. 94C, § 32J, as inserted by St. 1989, c. 227, § 2, and amended by St. 1998, c. 194, § 146.

---

[2]The defendant does not claim that the jury was improperly instructed on the elements of the offense charged or in any other manner.

Although the defendant admits that the evidence could lead a reasonable person to conclude that the Immaculate Conception School "appeared to be a school," he nonetheless finds fault in the Commonwealth's evidence where it failed to specify exactly what type of school it was among the choices enumerated in the statute. While there was no direct evidence that it was an elementary school, there was circumstantial evidence from which the jury could rationally reach that conclusion. See *Commonwealth* v. *Arroyo*, 442 Mass. 135, 140 (2004), quoting from *Commonwealth* v. *Bush*, 427 Mass. 26, 30 (1998) ("[c]ircumstantial evidence is competent to establish guilt beyond a reasonable doubt"). Here, the evidence (which we must view in the light most favorable to the Commonwealth) as to the nature of the school was provided by several witnesses who were familiar with the city, the neighborhood, and the school itself. Indeed, the evidence came from those who had been inside the school, driven by it on a daily basis, and had grandchildren who attended it for several years. See *Commonwealth* v. *Gonzales*, 33 Mass. App. Ct. 728, 730 n.1 (1992) (officers may use their personal knowledge to categorize the school). Children were seen carrying books, arriving on school buses, or being conveyed to and from the school by parents, and assisted by crossing guards. There was also testimony that the Immaculate Conception School was a parochial school.

From this evidence, we conclude that a rational jury could find that the Immaculate Conception School was an elementary school. See *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980) ("inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable"). From the standpoint of common sense, see *Commonwealth* v. *Drew*, 4 Mass. App. Ct. 30, 32 (1976) ("Whether an inference is warranted or impermissibly remote must be determined, not by hard and fast rules of law, but by experience and common sense"), the evidence illustrated many of the trappings of such a school that justified that inference. See *Commonwealth* v. *Williams*, 54 Mass. App. Ct. 236, 245 n.11 (2002) (that school was elementary school could be inferred from police officer's testimony that it was attended by children between ages five

and ten, including that officer's godchildren, and that he used to work there as crossing guard).[3]

This is not a case where the Commonwealth simply relied on the name of the school to support this element. Contrast *Commonwealth* v. *Gonzales, supra* at 730; *Commonwealth* v. *Vasquez,* 33 Mass. App. Ct. 950, 950 (1992). Nor is this a case like *Commonwealth* v. *Burke,* 44 Mass. App. Ct. 76, 78-79 (1997), where the evidence showed that the school at issue was a preschool attended by children between the ages of three and five and one-half years at a time when § 32J did not include preschools among the list of qualifying areas of prohibition.[4] In fact, rather than the toys being carried by the children in *Burke,* the children here were carrying books, which reasonably indicated educational responsibilities more in line with an elementary school than a preschool or daycare center. See *id.* at 78. Although the jury were not required to find that the Immaculate Conception School was an elementary school, it was far from irrational for them to have done so. We will not second-guess that conclusion.

*Judgment affirmed.*

---

[3]The defendant suggested at oral argument that the equivocal nature of the evidence could have permitted the jury to conclude that the Immaculate Conception School was possibly any number of different institutions that are not covered by § 32J. However, "[t]o the extent that conflicting inferences are possible from the evidence, 'it is for the jury to determine where the truth lies.' " *Commonwealth* v. *Wilborne,* 382 Mass. 241, 245 (1981), quoting from *Commonwealth* v. *Amazeen,* 375 Mass. 73, 81 (1978). See *Jackson* v. *Virginia,* 443 U.S. at 319 (it is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

[4]See St. 1998, c. 194, § 146, made effective July 1, 1998, which inserted the words "accredited preschool, accredited headstart facility" following the word "private" in the first paragraph of § 32J.