## COMMONWEALTH *vs.* EDWARD DANCY.

No. 08-P-280.

Suffolk. May 1, 2009. - September 2, 2009.

Present: KANTROWITZ, McHUGH, & MEADE, JJ.

*Controlled Substances. "School Zone" Statute. Jury and Jurors. Practice, Criminal,* Conduct of juror, Instructions to jury, Argument by prosecutor. *Witness,* Expert. *Evidence,* Hypothetical question.

At a criminal trial, the judge properly denied a criminal defendant's motion for a required finding of not guilty, where the circumstantial evidence, combined with expert testimony, was enough for a reasonable jury to conclude that the defendant sold cocaine, and did so near a school zone. [178-179]

A criminal defendant failed to demonstrate, on the present record of his appeal, that he was deprived of his right to a fair trial because a juror slept through testimony; however, where the record raised a distinct possibily that the juror was asleep for a significant portion of the trial, the defendant could address the issue through a motion for a new trial. [179-182]

At the trial of a criminal complaint alleging controlled substances violations, the admission in evidence of testimony of the Commonwealth's expert (a narcotics detective) in response to a hypothetical question did not rise to the level of prejudicial error, where the testimony was not definitive, but instead represented the detective's thoughtful response to a hypothetical based on the facts of the case; where the testimony was not conclusory, but part of his broader explanation of characteristics of drug transactions; where the hypothetical was based on previous testimony of other police officers and asked for the expert's opinion, not his observations of the crime; and where, in any event, the Commonwealth presented a strong case against the defendant. [182-186]

At the trial of a criminal complaint alleging controlled substances violations, the judge properly explained each of the three elements of unlawful distribution. [186-187]

During closing argument at a criminal trial, the prosecutor properly based an assertion on expert testimony and properly drew a connection between the defendant's conduct and typical conduct [187], made a reasonable inference from the testimony [188], and did not improperly vouch for the credibility of police witnesses [188-189]; further, one statement, to which the defendant did not object, although improper because it was not based on evidence before the jury, did not create a substantial risk of a miscarriage of justice, given the judge's instructions [187-188, 189-190].

COMPLAINT received and sworn to in the Boston Municipal Court Department on August 29, 2006.

The case was tried before *Tracy-Lee Lyons*, J.

*Joanne T. Petito* for the defendant.

*Carina R. Canaan*, Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. The defendant was convicted by a jury of distribution of cocaine in violation of G. L. c. 94C, § 32A, and distribution within 1,000 feet of a school zone in violation of G. L. c. 94C, § 32J. On appeal, the defendant argues that (1) the trial judge erred in denying his motion for a required finding of not guilty; (2) he was deprived of his right to a fair trial because a juror slept through testimony; (3) the judge improperly admitted expert testimony; (4) the judge failed to instruct the jury on an essential element of the crime of distribution; and (5) the Commonwealth's closing argument was improper. He also argues ineffective assistance of counsel. With some reservations on the sleeping juror issue, and inviting counsel to file a motion for a new trial on that issue, we affirm.

*Motion for required finding.* In determining whether the judge properly denied the defendant's motion for a required finding of not guilty, we view the evidence in the light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). A jury could have found the following facts.

On August 28, 2006, around 7:00 P.M., Officers Patrick Champagnie and Kenneth Reid of the Boston police drug control unit were surveilling the area of Tremont and West Springfield Streets in the South End section of Boston. The officers in their unmarked car parked on Tremont Street about two car spaces away from West Springfield Street. Officer Champagnie observed a woman, Leanne Scardoni, walk from around the corner on West Springfield Street out onto Tremont Street, pace back and forth while looking around, and then walk back down West Springfield Street. He saw her return to the corner to look around several times over the course of ten minutes. When she was out of sight on West Springfield Street, Officer Champagnie observed a grey Toyota Camry automobile, driven by the defendant, pull up and park behind the unmarked police car. Scardoni again

walked out onto Tremont Street, walked directly to the Camry, and entered into the front passenger seat. Officer Champagnie observed Scardoni turn her back toward the passenger window and lean toward the center of the car. The defendant turned toward her and they appeared to have a brief conversation.

In less than a minute, Scardoni exited the car and began walking toward West Springfield Street. The defendant exited the car a few moments later, met up with her at the corner of West Springfield and Tremont Streets, and spoke with her briefly. They parted and Scardoni stopped to sit down on the steps of the first apartment building on West Springfield Street. Officer Champagnie approached Scardoni and observed her packing a pipe with "crack" cocaine.[1]

The defendant kept walking down West Springfield Street and entered the basement of a church that was hosting a Narcotics Anonymous/Alcoholics Anonymous (NA/AA) meeting. Officers Walsh, Donga, and McDonough, who were also surveilling the area and had learned from Officer Champagnie that drugs were found on Scardoni, placed the defendant under arrest.

At booking, a search of the defendant yielded no drugs, but $536 in cash, including one crumpled twenty dollar bill that was separate from the rest of the cash, was recovered. The police found one cellular telephone (cell phone) on the defendant and two other cell phones in his car.

Detective Timothy Lynch testified that the area of Tremont Street and West Springfield Street has a "medium to high" level of drug distribution. He stated that crack cocaine is commonly sold in denominations of ten dollars, twenty dollars, and higher quantities. Further, he testified that drug dealers commonly have multiple cell phones to separate drug transaction telephone calls from personal telephone calls. He acknowledged that it is quite possible for a drug dealer to have no drugs on his person.

Officer Champagnie testified that there is an elementary school located on West Springfield Street that he passed many times during work. He saw young children playing and being picked up in front of the school. He measured the distance from the school to the location of the defendant's parked car to be 450

---

[1]The police recovered the drugs from Scardoni and issued her a summons for court.

feet. Officer Donga also testified that his former brother-in-law used to work at the school and that it was a Boston public elementary school.[2]

The defendant, relying primarily on the fact that there was no eyewitness testimony of a drug transfer, contends that the evidence was insufficient to show that he distributed crack cocaine within 1,000 feet of a school zone.

In determining whether the judge properly denied the defendant's motion for a required finding of not guilty, we focus on whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis omitted). *Commonwealth* v. *Latimore*, 378 Mass. at 677, quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). "Under the standard set out in *Latimore*, circumstantial evidence is a permissible basis upon which to premise a conviction." *Commonwealth* v. *Tanner*, 66 Mass. App. Ct. 432, 434 (2006). See *Commonwealth* v. *Rivera*, 31 Mass. App. Ct. 554, 556 (1991).

Here, the alleged transaction occurred in an area of medium to high drug activity. See *Commonwealth* v. *Pena*, 40 Mass. App. Ct. 905, 905 (1996). Scardoni repeatedly walked out to Tremont Street and looked around. Once she saw the defendant arrive in his car, she walked directly to him. While in the car, Scardoni leaned toward him and spoke with him briefly. The encounter lasted less than one minute. Immediately after Scardoni left the car, she was found with crack cocaine. The defendant had a crumpled twenty dollar bill in one pocket and a large amount of cash in another pocket. See *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 410 (1989). In addition, he had three cell phones. See *Commonwealth* v. *Suarez*, 59 Mass. App. Ct. 111, 118 (2003) (multiple cell phones evidence of drug distribution). Although no witness observed a hand-to-hand drug transfer, the circumstantial evidence, combined with the expert testimony,

---

[2]The defendant also testified at trial. He stated that he had been clean for about nine years and that on the night in question he attended the NA/AA meeting. He testified that Scardoni was a friend whom he saw as he was parking and with whom he spoke briefly in his car to encourage her to stay off drugs. He also testified that he only owned one cell phone and that the other two cell phones found in the car belonged to his girl friend and brother, who were both at the meeting.

was enough for a reasonable jury to conclude that the defendant sold cocaine. See *Commonwealth* v. *Soto*, 45 Mass. App. Ct. 109, 111-112 (1998); *Commonwealth* v. *Tanner*, 66 Mass. App. Ct. at 434-435. "The Commonwealth in proving its case need not exclude every hypothesis. The inference that the defendant sold the drugs 'need not be necessary or inescapable so long as it is reasonable and possible.' " *Commonwealth* v. *Soto, supra* at 112, quoting from *Commonwealth* v. *Cohen*, 412 Mass. 375, 380 (1992).

Similarly, the testimony of Officers Champagnie and Donga was sufficient for a rational juror to find that the defendant sold drugs near a school zone. The school zone statute applies to anyone who distributes cocaine within 1000 feet of "a public or private . . . elementary, vocational, or secondary school . . . ." G. L. c. 94C, § 32J, as amended by St. 1998, c. 194, § 146. "To discharge the Commonwealth's burden [of showing that the school met the statutory requirements], an arresting officer may testify upon personal knowledge that the subject school is an elementary school." *Commonwealth* v. *Williams*, 54 Mass. App. Ct. 236, 245 n.11 (2002). Officer Champagnie testified that he passed by the school many times and saw young children playing, participating in after school programs, and being transported. See *Commonwealth* v. *Laro*, 68 Mass. App. Ct. 556, 557-559 (2007). He also testified that the school was named Hurley Elementary School and that young children attended the school. Officer Donga testified that his former brother-in-law worked at the school as a custodian. See *Commonwealth* v. *Williams, supra.* "While there was no direct evidence that it was an elementary school, there was circumstantial evidence from which the jury could rationally reach that conclusion." *Commonwealth* v. *Laro, supra* at 559.

Based on the evidence presented by the Commonwealth, the judge properly denied the defendant's motion for a required finding of not guilty.

*Sleeping juror.* In the middle of the Commonwealth's direct examination of its second witness, and about halfway through all of the testimony, the trial judge stated during a sidebar conference called for other reasons that "[j]uror number one keeps falling asleep."[3] She called a five-minute recess, which appar-

---

[3]The entire testimony consumes 112 pages of transcript. The judge's observa-

ently wakened the juror, and the trial proceeded to a conclusion without further apparent incident.

In *Commonwealth* v. *Braun*, 74 Mass. App. Ct. 904, 905 (2009), released after the case at hand was tried, we said that a

> "judge abused his discretion by failing to conduct a voir dire where there was a very real basis for concluding that the juror was sleeping during testimony and the judge's instructions, thereby calling into question that juror's ability to fulfil her oath . . . . The juror's inattentiveness was not a momentary lapse, but an inattention that spanned all or portions of the testimony of two witnesses and the judge's instructions to the departing jury. That the judge was not *certain* whether the juror was sleeping and was unwilling to make such a finding should not have ended the inquiry. Uncertainty that a juror is asleep is not the equivalent of a finding that the juror is awake, or has a 'sour face' " (emphasis in original).

In making that statement, we were being faithful to our own well-established law, see *Commonwealth* v. *Stokes*, 440 Mass. 741, 751 (2004), and to well-considered decisions elsewhere. See, e.g., *United States* v. *Bradley*, 173 F.3d 225, 230 (3d Cir.), cert. denied sub nom. *Mattison* v. *United States*, 528 U.S. 963 (1999) (judge "had a legitimate basis to dismiss [snoring juror] . . . [and] had sufficient information to support the dismissal and so did not have to voir dire her"); *People* v. *Evans*, 710 P.2d 1167, 1168 (Colo. Ct. App. 1985); *Samad* v. *United States*, 812 A.2d 226, 230-231 (D.C. 2002), cert. denied, 538 U.S. 934 (2003), quoting from *Golsun* v. *United States*, 592 A.2d 1054, 1056 (D.C. 1991) ("[i]f . . . the court notices, or is [reliably] informed, that a juror is asleep during trial, the court has a responsibility to inquire and to take further action if necessary to rectify the situation. . . . The trial court should begin, for example, with a hearing to determine whether the juror had been asleep and, if so, whether the juror had missed essential portions of the trial. . . . On the basis of its findings the court should then determine whether the juror's conduct had resulted in substantial

---

tion is recorded on the fifty-second page of that testimony, forty-six percent of the way through.

prejudice to the accused"); *People* v. *South*, 177 A.D.2d 607, 608 (N.Y. App. Div. 1991) (judge "should have granted the defendant's request and conducted a probing and tactful inquiry to determine whether juror number 9 was unqualified to render a verdict based upon her apparent sleeping episodes"); *People* v. *Simpkins*, 16 A.D.3d 601, 601-602 (N.Y. App. Div. 2005) (court "should have dismissed as grossly unqualified the juror who was repeatedly observed sleeping during the trial . . . [and w]here discharge of the juror would have made it impossible to continue with the trial, the court should have declared a mistrial").

A judicial observation that a juror is asleep, or a judge's receipt of reliable information to that effect, requires prompt judicial intervention to protect the rights of the defendant and the rights of the public, which for intrinsic and instrumental reasons also has a right to decisions made by alert and attentive jurors. To be sure, the judge has discretion regarding the nature of the intervention and the remedies for any sleeping that has occurred. If the sleeping is observed at the outset or when the juror is beginning to "nod off," it is likely that a break or a stretch will suffice.

If, however, the sleeping appears to have persisted, then, as we said in *Braun*, the judge has an obligation to conduct a sensitive voir dire to determine the extent to which the juror remains capable of fulfilling his or her obligation to render a verdict based on all of the evidence. We say a "sensitive" voir dire because the inquiry must stay clear of the juror's personal recollections of the substance of the evidence he saw or observed. Inquiry into that area would inevitably reveal aspects of the juror's thought processes, thus entering an area where judicial exploration is prohibited. See generally, e.g., *Commonwealth* v. *Fidler*, 377 Mass. 192, 201 (1979). Instead, the inquiry should focus on how much of the evidence the juror has heard and witnessed and any impediments he or she may have to hearing and seeing the rest.

Here, the judge did not have the benefit of our decision in *Braun*, nor did defense counsel object to the course the judge followed. We recognize that in an area where, as here, the trial judge has a fair measure of discretion, "[t]he burden is on a defendant to show that the judge's decision in the matter was

wrong, and an appellate court, acknowledging that the judge has a range of discretion, will not reverse his decision and vacate a conviction unless he is shown to have been arbitrary or unreasonable." *Commonwealth* v. *Brown,* 364 Mass. 471, 476 (1973). See *Commonwealth* v. *Means,* 71 Mass. App. Ct. 788, 798 (2008).

The defendant here has not met his burden. The present record does not entitle the defendant to a new trial, for it does not tell us how often the judge observed the juror sleeping and over what period of time, or what the judge observed the juror doing when she was not asleep. At the same time, the record raises a distinct possibility that the juror was asleep for a significant portion of the trial, the possibility, that is, of "[a] structural error . . . that so infringes on a defendant's right to the basic components of a fair trial that it can never be considered harmless." *Commonwealth* v. *Villanueva,* 47 Mass. App. Ct. 905, 906 (1999).

We recognize that counsel, like the judge, did not have the benefit of *Braun.* As such, it appears that the wiser course of action would be to allow him to address this issue, through a motion for a new trial, the result of which would be full findings, based on the judge's observations and any other available evidence, regarding the extent to which the juror was sleeping during the course of the trial.

*Expert testimony.* Officer Lynch testified as an expert witness for the Commonwealth. On direct examination, after properly detailing the generic actions taken by one dealing drugs, the prosecutor asked the following hypothetical:

> "If you were to observe a woman come into a street corner, looking around, waiting for about ten minutes and then immediately going to a motor vehicle, entering that motor vehicle for a very short time, less than thirty second [*sic*]. Perhaps turning her body to the driver of that motor vehicle. Then leaving that car and . . . what would your impression be of that situation?"

Officer Lynch, over the defendant's objection, responded, "Based upon my training and experience, that would certainly pique my curiosity and it would lead me to believe that there

may have been a drug transaction." The witness then elaborated on the significance of the hypothetical facts.[4] The defendant argues that Officer Lynch, in answering the hypothetical, improperly stated his belief that a drug transaction had occurred.[5]

The use of narcotics police to testify as experts in drug cases has been consistently upheld. See *Commonwealth* v. *Johnson*, 413 Mass. 598, 604 (1992). A judge has broad discretion with regard to the admissibility of expert testimony. *Commonwealth* v. *Dockham*, 405 Mass. 618, 628 (1989). In general, expert testimony is admissible where it is "beyond the jury's common knowledge and may aid them in reaching a decision." *Commonwealth* v. *Colin C.*, 419 Mass. 54, 60 (1994). "An opinion within the domain of the expert's professional knowledge may be admissible even if the expert's testimony touches on the ultimate issues before the jury." *Commonwealth* v. *Woods*, 419 Mass. 366, 374-375 (1995). See Mass. G. Evid. § 704 (2008-2009). "An expert may not, however, offer an opinion as to the defendant's innocence or guilt." *Commonwealth* v. *Woods*, *supra* at 375.

Definitive testimony by police experts as to the occurrence of a drug deal is improper. For example, in *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 580 (1998), a police witness testified, "[F]rom my experience, I believed a drug transaction had taken place." This court held that the testimony "amounts to a

---

[4]Specifically, Officer Lynch explained, "As you described, the person is looking around waiting for a certain car to arrive. When a car shows up, that person runs over to the car, enters the car, turning towards each other. I've seen that on numerous occasion [*sic*] where the drug dealer will display a drug. The person that's going to buy that drug will turn, look at the drug. At some point money is exchanged and that person, the buyer usually leaves the car as soon as the drug deal is done which could be as soon as ten seconds, could be longer."

[5]After this testimony, the prosecutor continued the hypothetical by asking, "[W]hat if that same person then left the car and was shortly thereafter joined by the driver who had been in the car initially. Based on your training and experience, what would you think of that?" The witness replied, "My first thought would be maybe there was a problem, maybe the drug buyer didn't give enough money and the drug dealer wanted to talk to that person additionally. Or as I described earlier in my testimony, could be that the drug dealer, the person who's driving the car wanted to see where the drug buyer was going to see if that person might have been reporting to the police." As both hypotheticals raise the same issue, for purposes of the defendant's claim we focus on the first hypothetical question and answer.

personal assurance by the witness that the crime charged had occurred, and thereby constitutes an improper intrusion into the fact-finding function of the jury." *Ibid.* In *Commonwealth* v. *Delgado*, 51 Mass. App. Ct. 661, 663 (2001), upon which the defendant relies, a police expert testified, "A person who would have that much heroin on him, I would believe would be a distributor of heroin." This court similarly held that the testimony constituted an opinion as to the defendant's guilt. *Ibid.* In contrast, where a police officer testified that "somebody who would have in his possession this amount of cocaine is a substantial trafficker in cocaine," this court held that testimony admissible because it did not comment on the defendant's activity directly. *Commonwealth* v. *Villanueva*, 47 Mass. App. Ct. at 907.[6]

The use of hypothetical questions during direct examination may be admissible where they are based on evidence already admitted in trial and do not require the witness to comment on the guilt or innocence of the defendant. See *Commonwealth* v. *Burgess*, 450 Mass. 422, 436 (2008); *Commonwealth* v. *Little*, 453 Mass. 766, 768-771 (2009). For example, in *Commonwealth* v. *Wilson*, 441 Mass. 390, 400-401 (2004), the prosecutor posed a hypothetical question based on admitted evidence, namely one-half ounce of marijuana packaged in twenty individual bags, $476 in cash, a pager, and a cell phone. The police witness testified that the hypothetical facts were consistent with an intent to distribute drugs, instead of with personal use. *Ibid.* The Supreme Judicial Court held that this testimony was admissible because the hypothetical was limited to evidence in the case. *Id.* at 401. Similarly, in *Commonwealth* v. *Burgess*, *supra* at 436, the prosecutor posed a hypothetical question to a medical expert as to whether certain facts, identical to evidence in the case, were consistent with the manner in which the victim was wounded. According to the court, this hypothetical was proper because it asked for an expert opinion based on admitted evidence. *Ibid.* In contrast, hypothetical questions that were posed to a detective who collected evidence at the scene of the crime were improper

---

[6]Additional guidance may be found in child sexual abuse cases in that an expert may testify to the general characteristics of sexually abused victims, but may not compare a particular victim to those general characteristics. See *Commonwealth* v. *Dockham*, 405 Mass. 618, 627-630 (1989); *Commonwealth* v. *LaCaprucia*, 41 Mass. App. Ct. 496, 497-498 (1996).

because they asked the expert to compare hypothetical facts to his own observations of the crime scene, essentially asking for comment on the credibility of the Commonwealth's case. *Id.* at 434-436.

Here, we review the defendant's claim for prejudicial error because the defendant objected once the prosecutor posed the hypothetical question. Compare *Commonwealth* v. *Cancel*, 394 Mass. 567, 570-571 (1985). Although it is a close question, we find that there was no error in admitting Officer Lynch's testimony. His statements were not definitive, but instead represented his thoughtful response to a hypothetical based on the facts of the case. Nor were his statements conclusory, but rather part of his broader explanation of characteristics of drug transactions. "[I]n determining whether particular expert testimony is lawful, the better practice is to focus the analysis on whether the evidence is *explanatory*" (emphasis in original). *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. at 581. Further, the hypothetical was based on the previous testimony of three police officers and asked for Officer Lynch's opinion, not his observations of the crime. Officer Lynch was also subject to cross-examination to ferret out any weaknesses in his testimony.[7]

Even if the expert testimony were improper, it was harmless, as the Commonwealth presented a strong case. See *Commonwealth* v. *Rivera*, 425 Mass. 633, 645 (1997). Even without Officer Lynch's response to the hypothetical, the jury would have known that Scardoni walked up to Tremont Street several times and then, once the defendant arrived, walked directly to his car; she got into his car, turned toward the center of the car, spoke briefly with the defendant, and left in less than a minute; shortly thereafter she was found with crack cocaine; the defendant was found with $536, including a crumpled twenty dollar bill separate from the

---

[7]The defendant makes several other arguments that certain testimony was improper, none of which are meritorious. Police testimony that the street corner was an area where they had made several drug arrests was admissible. See *Commonwealth* v. *Gonzalez*, 47 Mass. App. Ct. 255, 259 (1999); *Commonwealth* v. *Best*, 50 Mass. App. Ct. 722, 727 (2001). Further, testimony by Officers Donga and Walsh about receiving police information before the arrest was admissible. See *Commonwealth* v. *Miller*, 361 Mass. 644, 659 (1972) (purpose was to show police state of knowledge that impelled their approach to the defendant). Lastly, police testimony regarding the elementary school was admissible nonhearsay. See Mass. G. Evid. § 801(c).

rest of his money, and three cell phones. In addition, the jury would have known that the area of Tremont Street and West Springfield Street was a medium to high drug activity area, that drug dealers choose to conduct deals in cars to avoid police surveillance, and that drug dealers may use multiple cell phones. Based on all of this evidence, Officer Lynch's response to the hypothetical was not a decisive factor in the jury's decision. See *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. at 580.[8]

*Jury instructions.* The defendant, for the first time on appeal, claims that the judge did not instruct the jury on the "knowing or intentional" element of unlawful distribution. In reviewing the jury instructions for error, we must "consider the charge, taken as a whole, and assess the possible impact of the alleged error on the deliberations of a reasonable juror, i.e., whether a reasonable juror could have used the instruction incorrectly." *Commonwealth* v. *Rosa*, 422 Mass. 18, 27 (1996).

Here, the judge outlined for the jury the three elements of unlawful distribution that the Commonwealth must prove:

> "First, that the substance in question is a Class B controlled substance, namely cocaine. Two, that the Defendant distributed some amount of that substance to another person or persons with the intent to distribute that person [*sic*] to another person. And third, that the Defendant did so knowingly or intentionally."

The judge went on to define "knowingly or intentionally" as doing something "consciously, voluntarily and purposefully and not because of ignorance, mistake or accident," in accordance with Instruction 5.53 of the Model Jury Instructions for Use in the District Court (1995).

Subsequently, while elaborating on each of the three elements, the judge incorrectly stated the second element as possession with intent to distribute. Upon the Commonwealth notifying the judge of this error, the judge made a curative instruction: "Here the Defendant is charged with distribution, he's not

---

[8]The defendant also argues, pursuant to *Commonwealth* v. *Moffett*, 383 Mass. 201, 203-209 (1981), that trial counsel's failure to request jury instructions on how to evaluate expert testimony constituted ineffective assistance of counsel. The judge properly instructed the jury to "determine which witnesses to believe and how much weight to give their testimony." This was sufficient.

charged with possession. So let me just go back, I'm going to read the second element." The judge then proceeded to explain unlawful distribution, the second element, and did not again explain the "knowing or intentional" element. There was no need to repeat the third element in conjunction with the corrected second element. See *Commonwealth* v. *Maynard*, 436 Mass. 558, 571 (2002) (jury presumed to follow instructions). Given that the judge properly explained each of the three elements of unlawful distribution, there was no substantial risk of a miscarriage of justice.

*Commonwealth's closing argument.* The defendant argues that four statements made by the prosecutor during closing argument were improper. As the defendant did not object to any of these statements at trial, we review each one in turn to determine whether there was a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Zavala*, 52 Mass. App. Ct. 770, 776 (2001).

1. *Misstatement of amount of cash on defendant.* The defendant argues that during the closing argument the prosecutor incorrectly stated that the amount of cash found on the defendant corresponded with the amount commonly held by drug dealers, as described by the expert witness. Specifically, the defendant points to the prosecutor's statement during closing that "[i]t's not surprising for drug dealers to have a fair amount of cash on them, but no more than a couple hundred dollars, which is exactly what he had." During the Commonwealth's case, Detective Lynch testified that drug dealers frequently do not carry large amounts of cash, for example "several hundred dollars." The prosecutor can properly base his argument on expert testimony and draw a connection between the defendant's conduct and typical conduct. See *Commonwealth* v. *Johnson*, 429 Mass. 745, 750 (1999) ("the prosecutor is allowed to assist jurors in analyzing the evidence and suggesting what conclusions they should draw from the evidence"). There was no error.

2. *Assertion that the defendant conducted drug business at NA/AA meetings.* The defendant argues that the prosecutor improperly stated in his closing argument that the defendant conducted a drug dealing business at NA/AA meetings. The prosecutor stated, without objection:

"And that's precisely why he was going to that NA meet-

ing that night as well. He wasn't going there because he's nine years sober and clean. He was going because that's good business. If you're dealing drugs, where is it better to go than a roomful of sixty people who are recovering addicts. That's what he was doing on August 28th, 2006."

There was no evidence presented to the jury suggesting that the defendant conducted business at NA/AA meetings. The Commonwealth's theory of the case was that he sold drugs from his car, which he parked near an NA/AA meeting. "Prosecutors must limit the scope of their arguments to facts in evidence and inferences that may be reasonably drawn from the evidence." *Commonwealth* v. *Coren,* 437 Mass. 723, 730 (2002). A prosecutor may not use "closing argument to argue or suggest facts not previously introduced in evidence." *Commonwealth* v. *Storey,* 378 Mass. 312, 324 (1979), cert. denied, 446 U.S. 955 (1980). Here, the prosecutor's statement was improper because it was not based on evidence before the jury.

3. *Misstatement of school zone testimony.* The defendant next argues that the prosecutor misstated the evidence regarding the school zone charge when he said, "[T]here's testimony that parents are coming and dropping off and picking up their kids as you might expect at any elementary school." During the Commonwealth's presentation of its case, Officer Champagnie testified, "I've seen young children playing in the school yard, I've seen [them] doing their after school program, being picked up, seen the transportation." A prosecutor may argue for a conviction based on the evidence and the inferences reasonably drawn therefrom. See *Commonwealth* v. *Kozec,* 399 Mass. 514, 516 (1987). Here, the prosecutor made a reasonable inference from the testimony, namely that elementary school children would be picked up and transported by their parents. See *Commonwealth* v. *Kirwan,* 448 Mass. 304, 317 (2007).

4. *Vouching of police witnesses.* Lastly, the defendant argues that the prosecutor improperly vouched for the credibility of the police witnesses. The prosecutor stated:

"Well first I would suggest to you that you've heard from three police officers that were there that night, that we're talking about. They were all very believable. They didn't

> make up things that they didn't see. No one alleged oh I could see through the dash and see what was going on in the car. That's not believable and they didn't say that. They were honest about what they saw. And I suggest that you credit their testimony. . . . All we know is what we saw, what the police officers, is that [the defendant] pulled up behind them.''

Improper vouching occurs when ''an attorney expresses a personal belief in the credibility of a witness, or indicates that he or she has knowledge independent of the evidence before the jury.'' *Commonwealth* v. *Kee*, 449 Mass. 550, 560 (2007), quoting from *Commonwealth* v. *Ortega*, 441 Mass. 170, 181 (2004). However, a prosecutor may ''point to reasons why a witness's testimony, or portions of a witness's testimony, should logically be believed.'' *Commonwealth* v. *Raposa*, 440 Mass. 684, 696 (2004), quoting from *Commonwealth* v. *Rolon*, 438 Mass. 808, 816 (2003).

Here, the prosecutor did not imply that he had ''special knowledge by which [he could] verify the witness's testimony.'' *Commonwealth* v. *Ciampa*, 406 Mass. 257, 265 (1989). The prosecutor's remarks emphasized that the police testified based on their observations, and did not express the prosecutor's personal opinion. Compare *Commonwealth* v. *Nicholson*, 20 Mass. App. Ct. 9, 17-18 (1985) (improper to state ''in my years of experience, [she] is one of the most truthful, sincere, candid witnesses that I have seen in any courtroom''); *Commonwealth* v. *Sapoznik*, 28 Mass. App. Ct. 236, 246-247 (1990) (improper to use magistrate ruling to vouch for credibility of police witness). Further, nothing in the prosecutor's statements suggested that he had information outside the record. By using the phrase ''I suggest'' twice, the prosecutor urged the jury to draw inferences from the evidence and nothing more. See *Commonwealth* v. *Silva*, 401 Mass. 318, 329 (1987). Therefore, the prosecutor did not vouch for the credibility of the police witnesses.

In sum, although the prosecutor improperly stated during the closing argument that the defendant conducted drug deals at NA/AA meetings, there was no substantial risk of a miscarriage of justice. ''In analyzing a claim of improper argument, the prosecutor's remarks must be viewed in light of the 'entire

argument, as well as in light of the judge's instruction to the jury and the evidence at trial.' " *Commonwealth* v. *Lamrini*, 392 Mass. 427, 432 (1984), quoting from *Commonwealth* v. *Bourgeois*, 391 Mass. 869, 885 (1984). Here, the judge instructed the jury that the closing arguments were not evidence.[9] See *Commonwealth* v. *Kee*, 449 Mass. at 560 ("jury instructions may mitigate any prejudice inherent in closing arguments"). The judge also instructed the jury how to assess the credibility of witnesses. See *Commonwealth* v. *Watkins*, 425 Mass. 830, 840 (1997) ("We presume that a jury follow all instructions given to it"). In addition, the defendant did not object to any of the statements. "Although not dispositive, the fact that the defendant did not object is some indication that the tone and manner of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial." *Commonwealth* v. *Ringgard*, 71 Mass. App. Ct. 197, 203 (2008).[10]

*Judgments affirmed.*

---

[9]Specifically, the judge stated: "The opening statements and the closing arguments of the lawyers are not a substitute for the evidence. They are only intended to assist you in understanding the evidence and the contentions of the parties."

[10]The defendant argues that trial counsel's failure to object to certain testimony, erroneous jury instructions, and the Commonwealth's closing argument constituted ineffective assistance of counsel. He did not bring this claim as part of a motion for a new trial pursuant to Mass.R.Crim.P. 30(b), as amended in 435 Mass. 1501 (2001). Therefore, we will only reverse if the factual basis for the claim appears indisputably on the record. *Commonwealth* v. *Zinser*, 446 Mass. 807, 811 (2006). His claims do not fit within this narrow exception.