NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-703

COMMONWEALTH

vs.

ANDRES RAMOS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from his convictions, after a Superior Court jury trial, of trafficking in fentanyl, see G. L. c. 94C, § 32E (c 1/2), and operating to endanger, see G. L. c. 90, § 24 (2) (a).[1] At trial, one contested issue was whether the defendant intended to distribute the large quantity of fentanyl police recovered from near his person. On appeal, the defendant argues two errors in the admission of expert testimony regarding the element of possession with intent to distribute as compared to simple possession. We affirm.

---

[1] The defendant does not address the operating to endanger conviction in his briefing and we therefore need not address that conviction further. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019) ("appellate court need not pass upon questions or issues not argued in the brief").

1.  Expert's explanation of opinion.  State Police Sergeant

Edward Troy testified as an expert on narcotics distribution.

With the judge's advance approval and over the defendant's

objection, the Commonwealth was permitted to ask Sergeant Troy

the following question, based on what the defendant acknowledges

"are precisely the facts pertaining to the defendant" himself.

> "Hypothetically, if a person was found with no pipes,
> cotton swabs, spoons, needles, or straws, but had on his
> person approximately 70 grams of powder containing fentanyl
> packaged in seven cylinders wrapped in wax-like paper, one
> knotted plastic bag containing 1.4 grams of fentanyl, a
> second knotted plastic bag containing 3.77 grams of
> fentanyl and heroin, two pieces of powder wrapped in wax-
> like paper containing approximately 0.70 grams of fentanyl
> each, and $335 in cash, would that situation be more
> consistent, in your opinion, with personal use of fentanyl
> or the intent to distribute fentanyl?"

Sergeant Troy answered, "That's -- that's not consistent with

personal use.  That's consistent with intent to distribute."

On appeal, the defendant does not press his objection to

the hypothetical question itself, nor does he point to anything

improper in Sergeant Troy's answer to that question.  We agree

with the Commonwealth that the question and answer were

permissible under decisions such as Commonwealth v. Dancy, 75

Mass. App. Ct. 175, 184-185 (2009).[2]  Although an argument

heading in the defendant's brief refers to "[t]he hypothetical

_____

[2] The judge expressed reservations about the caselaw
permitting this type of hypothetical but recognized that he was
bound to follow it.

2

question and the expert's response," the defendant's actual argument focuses instead on how Sergeant Troy answered a follow-up question from the Commonwealth.

That question was, "What makes you say that scenario would be more consistent with the intent to distribute than with personal use?" The defendant objected to that question, but the objection was overruled. On appeal, he does not press the point, and we see no error or abuse of discretion in allowing the question to be asked.

Sergeant Troy's lengthy answer included the following statements, the emphasized portions of which (with bracketed numbers added for ease of reference) the defendant now asserts were improper:

> "As I said, [1] that's consistent with when people make a run <u>that are involved in the distribution of fentanyl</u>, the way it's packaged to the various customers and so forth. If the person was personal use, they would pick up a package, perhaps enough to last them for a few days. Maybe a gram, maybe even in an extreme case, you know, half a finger, a 5-gram package. You know, that would be potentially consistent with personal use. That's more commonly seen. [2] <u>But the way you're describing that it being packaged and the sheer weight of it</u>, with the minute doses that are used when it's -- when you consider how small these doses are of fentanyl, that's why that's consistent with intent to distribute. And the fact that there's some cash and there's also some drugs. [3] <u>It's, you know, during various times during when someone makes a run when they're selling -- going out, making a run, and selling drugs to -- in these various weights</u>. . . . So as a result, depending on where in the run . . . that they're making, selling the drugs . . . if they just left the stash location, there's going to be -- could be all drugs and no money. But if you get halfway through or a quarter of the

3

way through, there might be some money and still a lot of
drugs.  Or if you get near the end, there could be very
little drugs and quite a bit of money."

The defendant argues that the emphasized phrases amounted to
testimony that "when people engage in a factual scenario that is
exactly like the one in the hypothetical that [the defendant
himself] also engaged in, they are selling drugs [emphasis
omitted]."  This, in the defendant's view, did not merely touch
on the ultimate issue, but directly addressed it and asserted
that the defendant "was selling drugs and is guilty."  See
Dancy, 75 Mass. App. Ct. at 183 (expert may touch on ultimate
issues before jury but may not opine on defendant's innocence or
guilt).

The defendant did not object to or move to strike this
answer.  His objection to the question did not preserve an
objection to each and every aspect of the answer.  See
Commonwealth v. Almele, 474 Mass. 1017, 1018-1019 (2016).  We
therefore consider whether anything about the parts of the
answer of which the defendant now complains created a
substantial risk of a miscarriage of justice.  See id.  That
question turns on whether we have "a serious doubt whether the
result of the trial might have been different had the [claimed]

4

error not been made."[3]  Commonwealth v. LeFave, 430 Mass. 169, 174 (1999).

In the first passage, Sergeant Troy added unnecessary verbiage to the permissible "consistent with an intent to distribute" formulation described in Dancy, 75 Mass. App. Ct. at 184.  He opined that the facts in the hypothetical were "consistent with . . . people . . . that are involved in . . . distribution."  But his "statements were not definitive."  Id. at 185.  "Nor were his statements conclusory, but rather part of his broader explanation of characteristics of drug [distribution]."  Id.  Nowhere in Sergeant Troy's lengthy answer, or for that matter anywhere in his forty-four transcript pages of testimony, did he mention the defendant.

In the second passage, Sergeant Troy referred to certain elements of the hypothetical -- drug packaging and weight -- but not to persons engaged in drug distribution.  He explained why, in light of the minute amount of fentanyl in a typical dose, the elements in question were "consistent with intent to

---

[3] More specifically, as the Supreme Judicial Court has said, "we consider four questions:  (1) whether there was error, (2) whether the defendant was prejudiced by the error, (3) '[c]onsidering the error in the context of the entire trial,' whether it would be 'reasonable to conclude that the error materially influenced the verdict,' and (4) whether we may infer from the record that counsel's failure to object was not a reasonable tactical decision."  Commonwealth v. Russell, 439 Mass. 340, 345 (2003), quoting Commonwealth v. Randolph, 438 Mass. 290, 298 (2002).

5

distribute." This was entirely proper. See Dancy, 75 Mass. App. Ct. at 184.

In the third passage, stripped to its essentials, Sergeant Troy opined that when someone is out selling drugs, they will have relatively more drugs and less money at the beginning of the "run," and relatively less drugs and more money near the end of the "run." This did not use the "consistent with" formulation. Nor was it particularly responsive to the prosecutor's question because it did not explain why the amount of drugs and money in the hypothetical -- approximately seventy grams of fentanyl and $335 in cash -- were more consistent with the intent to distribute than with personal use. For the same reason, however, it was not particularly prejudicial.

More generally, the overall tenor of Sergeant Troy's testimony was focused not on any person's actual conduct but on whether hypothetical conduct was "consistent with" intent to distribute versus possession for personal use. He used the phrase "consistent with" eight separate times. The jury would not have misunderstood the testimony as a direct opinion on the defendant's guilt. Moreover, the undisputedly proper portions of the testimony, particularly as to the quantity possessed, established a strong case for intent to distribute. And the judge properly instructed the jury on how they should evaluate expert testimony. We therefore conclude that, to whatever

6

limited extent the testimony strayed outside the bounds established by prior case law, it did not create a substantial risk of a miscarriage of justice. See Commonwealth v. Almele, 87 Mass. App. Ct. 218, 228 (2015), S.C., 474 Mass. at 1019.

2. Effects of fentanyl. The defendant argues that Sergeant Troy's testimony about certain effects of fentanyl was more prejudicial than probative and should not have been admitted. We are unpersuaded. "[D]iscretion is vested in the judge to determine whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice to the opponent of its admissibility." Ruszcyk v. Secretary of Pub. Safety, 401 Mass. 418, 422 (1988). See Commonwealth v. Bonds, 445 Mass. 821, 831 (2006). There was no abuse of discretion here.

The defendant first points to Sergeant Troy's testimony that when fentanyl was introduced in this country in the mid-1990s, it was so potent that it caused "too many . . . overdose deaths," leading its distributors to take it off the market after a year or a year and a half. Notwithstanding his claim in his appellate brief, the defendant did not object to this testimony,[4] and so we review for whether any error created a substantial risk of a miscarriage of justice.

---

[4] The defendant objected only to Sergeant Troy's answer to a subsequent question asking what similarities between fentanyl

7

We see none. As part of his answer, Sergeant Troy further testified that when fentanyl was reintroduced ten to twelve years ago, "it was still a very potent and dangerous substance but less so than when it had come out . . . in the '90s," and that, as a result, it stayed here and has "taken over for heroin." Thus, although the potency of fentanyl in the 1990s was of limited relevance and was potentially inflammatory, Sergeant Troy himself immediately made clear that the fentanyl now in circulation is different and less potent. The jury would not have taken Sergeant Troy's testimony about an earlier type of fentanyl as applying to the fentanyl the defendant was charged with trafficking. If there was any unfair prejudice at all, we have no "serious doubt whether the result of the trial might have been different" had the testimony been excluded. See LeFave, 430 Mass. at 174.

The defendant next points to Sergeant Troy's testimony, in response to a question asking what was the average dose of fentanyl that is used at a given time, that fentanyl is up to 200 times more potent than heroin.[5] Once again, the defendant

_____

and heroin allowed fentanyl to be passed off as heroin. At the sidebar that followed, the defendant did not move to strike, or even mention, the earlier testimony about the introduction of fentanyl in the 1990s.

[5] Sergeant Troy concluded his answer by stating that the average dose of fentanyl "is between [five] milligrams and maybe an eighth of a gram."

8

did not object, nor did he move to strike the testimony. The testimony was relevant to whether the quantity of fentanyl found near the defendant was intended for personal use or instead for distribution. In light of the evidence that among the items police found near the defendant were approximately seventy grams of powder containing fentanyl, as well as a bag containing 3.77 grams of fentanyl and heroin, the relative potencies of fentanyl and heroin could have assisted the jury in deciding what the defendant intended to do with seventy grams of fentanyl. We cannot say that "the probative value of the evidence [was] substantially outweighed by its potential for unfair prejudice." Ruszcyk, 401 Mass. at 422. Admission of the evidence was not an abuse of discretion and certainly created no substantial risk of a miscarriage of justice.

Judgments affirmed.

By the Court (Sacks, Singh & Walsh, JJ.[6]),

Assistant Clerk

Entered: April 5, 2024.

---

[6] The panelists are listed in order of seniority.