## COMMONWEALTH *vs.* FELTON DYOUS.

No. 10-P-603.

Middlesex. March 2, 2011. - May 12, 2011.

Present: McHUGH, SMITH, & CARHART, JJ.

*Larceny. Constitutional Law,* Identification. *Evidence,* Identification. *Identification. Jury and Jurors. Practice, Criminal,* Motion for a required finding, Jury and jurors.

A District Court judge properly denied the criminal defendant's pretrial motion to suppress an identification, where, in the context of the case, the procedure employed was not impermissibly suggestive. [511]

At the trial of a criminal complaint charging larceny under $250, the evidence was sufficient to prove both asportation and intent permanently to deprive the owner of his property. [511-512]

At a criminal trial, the judge erred by failing to conduct a voir dire hearing after she was informed that a juror may have been sleeping during the trial, and because the error may have compromised the defendant's right to an impartial, attentive juror, this court concluded that the defendant was entitled to a new trial. [512-514]

COMPLAINT received and sworn to in the Cambridge Division of the District Court Department on September 2, 2008.

A pretrial motion to suppress evidence was heard by *Severlin B. Singleton,* J. and the case was tried before *Michele B. Hogan,* J.

*Barbara A. Munro* for the defendant.

*Samir Zaganjori,* Assistant District Attorney, for the Commonwealth.

CARHART, J. The defendant, Felton Dyous, appeals from his conviction of larceny under $250, G. L. c. 266, § 30(1).[1] On appeal, he argues that the identification procedure was unnecessarily suggestive, and that therefore the motion judge erred in

---

[1]The defendant was acquitted of the crimes of assault by means of a dangerous weapon and intimidation of a witness.

denying his motion to suppress. The defendant also argues that the trial judge erred by failing to grant his motion for a required finding, and that her response to a jury question was erroneous. Finally, the defendant argues that the trial judge erred by failing to conduct a voir dire hearing after she was informed that a juror may have been sleeping during the trial. Because we conclude that the trial judge should have conducted a hearing in order to determine whether the juror in question had indeed been sleeping, we reverse.

*Background.* 1. *Facts.* The jury could have found the following facts. On August 17, 2008, Charles Overy, together with a friend, Edward Landis, stopped at an automated teller machine (ATM) in Central Square in Cambridge. Overy went into the ATM vestibule and used the ATM. After using the ATM, Overy realized that he had left his ATM card in the machine. When he returned to the ATM vestibule, he encountered the defendant, who had entered the ATM area after Overy, and now had possession of Overy's ATM card and cash. Overy demanded that the defendant return the card and money. The defendant returned the card and money, some $200. Upon surrendering the money, the defendant asked whether he could keep "at least . . . a twenty." Landis and Overy refused. When Landis attempted to restrain the defendant and call the police, the defendant brandished a knife towards Landis and then fled on a bicycle.

2. *The identification.* Detective Mark Clavette of the Cambridge police department was the only witness to testify at the motion to suppress hearing, held on June 12, 2009. The motion judge made the following findings.[2] Landis reported the incident to the police, and a description of the perpetrator was broadcast on the Cambridge police frequency. Another officer who had been in the Central Square area informed Clavette that he had seen Dyous just before the police broadcast, and that Dyous's clothing and appearance fit the description of the person who had been involved in the ATM incident. Dyous was known to Clavette, who thought that the description on the broadcast fit Dyous. Armed with this information, Clavette arranged for

---

[2] At the argument of this case the record did not include the motion judge's findings. Subsequently, we received and reviewed his findings, which were filed on November 26, 2010.

Overy and Landis to view photographic arrays in order to determine whether they could identify the man involved in the ATM incident. On August 20, 2008, Overy was shown one photographic array. Although Dyous's photograph was included in the array, Overy selected another individual as the man involved in the ATM incident. On August 26, 2008, Clavette showed another photographic array to Overy. Again, although Dyous's photograph was included in the array, Overy selected yet another individual as the man involved in the ATM incident. On August 26, 2008, Clavette showed a photographic array to Landis. Landis identified three different individuals from the photographic array as his possible assailant. One of those three individuals was Dyous. Landis told Clavette that he could do a better job identifying his assailant if he saw him in person.

Three days later, on August 29, 2008, Clavette, on duty on another assignment, saw the defendant on a bicycle in the Central Square area. Clavette telephoned Landis and asked him to meet him in Central Square. Clavette gave no other information to Landis. Shortly thereafter Landis and his wife arrived in Central Square on their bicycles. Clavette asked Landis to ride his bicycle down Harvard Street in order to determine if his assailant was in the area. They made arrangements to meet a short distance from that area. After a few minutes, Landis arrived at the prearranged location where Clavette was waiting. Almost simultaneously, the defendant came into view. During his ride down Harvard Street, Landis had recognized the defendant as his assailant, and when the defendant was approximately ten feet from Landis and Clavette, Landis pointed to the defendant and identified him as the assailant at the ATM incident. While traveling down Harvard Street, Landis had observed three other people besides the defendant on Harvard Street.

As a result of Landis's identification of the defendant as his assailant, Clavette arrested the defendant and advised him of his Miranda rights. The defendant told Clavette that he understood his rights and then admitted that he had been involved in the ATM incident, but he denied using a knife.

*Discussion.* Because we conclude that the failure to conduct a voir dire of a juror who may have been sleeping warrants reversal (see discussion in part 3, *infra*), we first deal briefly with the other issues raised by the defendant.

1. *Motion to suppress*. The defendant argues that his identification by Landis was the product of an impermissibly suggestive identification procedure. While the procedure employed in this case is not without a danger of unnecessarily suggestive identification, we conclude that in the context of the facts of this case, the identification of the defendant by Landis was constitutionally sound.

When a defendant challenges an identification procedure, he has the burden of showing, by a preponderance of the evidence, that the identification was unnecessarily suggestive. *Commonwealth* v. *Johnson*, 420 Mass. 458, 463 (1995). One-on-one identifications are disfavored because they are viewed as inherently suggestive. *Id.* at 461. In this case, however, there was no one-on-one identification. Rather, Landis was told to ride his bicycle down a street in order to determine whether his assailant was in the area. This procedure did not result in a one-on-one confrontation akin to a "showup" identification. The defendant has failed to show, by a preponderance of the evidence, that the identification was unnecessarily suggestive. See *Commonwealth* v. *Martin*, 447 Mass. 274, 279-280 (2006), quoting from *Commonwealth* v. *Odware*, 429 Mass. 231, 235 (1999) ("It is the defendant's burden to prove by a preponderance of the evidence that the showup was 'so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny [him] due process of law' ").

2. *Motion for required finding*. Two witnesses, Clavette and Landis, testified at the trial. The defendant offered no evidence. At the conclusion of the evidence, the defendant moved for a required finding. The motion was denied. Because the Commonwealth had provided sufficient evidence to withstand such a motion, the judge's ruling thereon was correct. Analyzing the evidence in the light most favorable to the Commonwealth, as is appropriate when considering a motion for a required finding, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), we conclude that the Commonwealth met its burden. The defendant argues that the evidence did not support the elements of larceny and that neither asportation nor the intent to permanently deprive the owner of his property was proven. While these two elements are necessary in a prosecution for larceny, both ele-

ments may be proven by circumstantial evidence. The defend-
ant's control of the ATM card and the cash satisfied the asporta-
tion element, even though the control of the objects was for a
short time. The defendant's state of mind as to his intent to
permanently deprive was a question of fact to be determined by
the jury.

3. *Sleeping juror.* During the charge conference, prior to clos-
ing arguments, the prosecutor alerted the judge that a juror had
been sleeping. The following discussion took place.

> PROSECUTOR: "The only thing I would point out, Judge, just
> bring to the Court's attention, I don't know how significant
> it is, I noticed the juror to my right has been sleeping
> quite a bit . . . . I don't know, I just bring it to the Court's
> attention. I don't know if you want to make him the alter-
> nate or something, I just raise the issue."

> THE COURT: "Yeah, I don't know if they were sleeping or
> keeping their eyes down. Couldn't tell."

> PROSECUTOR: "I couldn't tell. I couldn't tell."

> THE COURT: "Yeah."

> PROSECUTOR: "It looked like he was sleeping a couple of
> times."

> THE COURT: "Yeah. If it's by agreement, I'm happy to name
> him as an alternate."

> DEFENSE COUNSEL: "No, it's not by agreement."

> THE COURT: "I didn't see. I couldn't make a determination
> myself."

> PROSECUTOR: "I thought he was, but . . . ."

> THE COURT: "Could you?"

> CLERK: "Short naps . . . ."

> THE COURT: "Short naps?"

> PROSECUTOR: "Yeah, cat naps."

CLERK: "They were quick. They weren't . . . ."

THE COURT: "Cat naps? I personally, I didn't observe him actually sleeping. So I'm not going to do anything."

A fundamental right enjoyed by all citizens is the right to trial before an impartial jury. *Commonwealth* v. *Keaton*, 36 Mass. App. Ct. 81, 87 (1994). Inherent in that right is the requirement that an impartial juror must also be attentive. If the judge observes that a juror is sleeping, or if reliable information to that effect is brought to the judge's attention, then the judge is required to take action that will preserve the defendant's and the public's right to an impartial, attentive juror. *Commonwealth* v. *Dancy*, 75 Mass. App. Ct. 175, 181 (2009). The judge has discretion in dealing with the issue, dependent upon the facts as presented to him or her. *Commonwealth* v. *Beneche*, 458 Mass. 61, 78 (2010). If, however, there is a question whether the juror was indeed asleep, i.e., that the juror's inattention was more than a momentary nodding off, then the trial judge has an obligation to conduct a voir dire in order to determine whether the juror is capable of rendering his or her verdict based upon all the evidence. *Commonwealth* v. *Dancy*, *supra* at 180, citing *Commonwealth* v. *Braun*, 74 Mass. App. Ct. 904, 905 (2009). Here, there was an ample basis for believing that one of the jurors was asleep during the trial. The statement of the prosecutor alerting the judge to the problem noted that the juror "has been sleeping quite a bit . . . ."[3] The colloquy that followed raises a real doubt whether the juror was attentive during the trial. This, coupled with the fact that the entire trial consisted of two witnesses, leads us to conclude that the defendant's right to an impartial, attentive juror may have been compromised.[4] A sensitive voir dire hearing may well have answered the open question in this case — was the juror indeed sleeping? Based on the record before us, we are left with serious doubts that the

---

[3] The prosecutor is to be commended for bringing this issue to the judge's attention.

[4] The trial judge's statement that she did not personally observe the juror sleeping and that therefore she would take no action was an insufficient basis for resolving the issue. See *Commonwealth* v. *Braun*, 74 Mass. App. Ct. at 904-905.

juror was attentive throughout the trial. Because there was no voir dire hearing and there were no findings establishing that the juror had been attentive and was capable of rendering a verdict based on all of the evidence, the defendant is entitled to the benefit of the doubt as to the juror's attentiveness and is therefore entitled to a new trial.[5]

> *Judgment reversed.*
>
> *Verdict set aside.*

---

[5]Given the result we reach, we need not address the defendant's argument that the trial judge erred in responding to a question from the jury.