NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

11-P-1912                                        Appeals Court

COMMONWEALTH  vs.  LUIS GONZALEZ.

No. 11-P-1912.

Essex.      January 15, 2014. - September 5, 2014.

Present:  Cypher, Rubin, & Hines, JJ.[1]


Jury and Jurors.  Practice, Criminal, Jury and jurors, Deliberation of jury, Question by jury, Voir dire. Constitutional Law, Delay in appeal.  Robbery. Intimidation of Witness.


Indictments found and returned in the Superior Court Department on May 31, 2006.

The cases were tried before David Lowy, J., and a motion for postconviction relief, filed on April 5, 2013, was heard by him.


Sharon Fray-Witzer for the defendant.
Marcia H. Slingerland, Assistant District Attorney, for the Commonwealth.

_____

[1] Justice Hines participated in the deliberation on this case while an Associate Justice of this court, prior to her appointment as an Associate Justice of the Supreme Judicial Court.

RUBIN, J. Background. The defendant was convicted after a jury trial of armed carjacking, armed robbery, and intimidation of a witness. See G. L. c. 265, §§ 21A, 17; G. L. c. 268, § 13B. This is his direct appeal.

During deliberations, the jurors sent the judge a question which read: "It has come to the group's attention that one juror fell asleep during the presentation of evidence and is not willing to accept others' recollection of what was missed. Is this grounds to have the juror dismissed?"

Although the prosecutor sought a voir dire, the judge declined to conduct one. He reasoned, "[I]f I were to voir dire this issue the only way to voir dire it would be to ask questions that get into the deliberative process." The judge did say that he had "looked at the jury numerous times." And, apparently assuming he knew which juror the question referred to, he said, "Every time I looked over . . . he never had his eyes shut for a significant period of time. And every time I looked at him it seemed that he was alert [and] paying attention . . . . I made a decision every time I looked over that he didn't seem to me to be asleep. I gave it serious [consideration] numerous times."

A subsequent jury question read, "We have a juror (#1) who seems to be biased towards police in general. He laughs every time the word police even comes up and refuses to even

contemplate a witness's testimony because he believes the police gave a deal.  Is this grounds for an alternate juror to be used?"  The judge seems to have concluded that the juror referred to in the first question was the same juror referred to in the second question, although there is no basis in the record for a conclusion that both notes refer to the same juror. Nonetheless, the judge stated, "[I]f you read between the lines here . . . the reason for the disagreement isn't that somebody might be asleep but has a different [view] of the evidence."

Discussion.  1.  The first jury question.  We turn first to the jury question about a sleeping juror. Our appellate courts have had a substantial amount to say about this in the past several years, and of course we recognize that the trial judge in this case did not have the benefit of this teaching.

"[A] judge's receipt of reliable information" that a juror was asleep during evidence requires a voir dire of the jurors. Commonwealth v. Beneche, 458 Mass. 61, 78 (2010), quoting from Commonwealth v. Dancy, 75 Mass. App. Ct. 175, 181 (2009).  See Commonwealth v. Braun, 74 Mass. App. Ct. 904, 905 (2009).  The failure to conduct a voir dire in the face of a substantial reason to think a juror is sleeping during trial is reversible error because it prevents the judge from determining the extent of the sleeping and so from having the ability to properly exercise his or her discretion in handling the issue.

Notwithstanding the judge's observations and his concerns about juror disagreement, none of his conclusions amounts to a finding that the juror was not asleep. In the face of a question from the jury, of which the juror in question was a member, reporting that a juror was in fact asleep during evidence -- receipt of reliable information that a juror was asleep -- the judge was required under Braun to conduct a voir dire. "By not conducting a voir dire, the judge prevented himself from obtaining the information necessary to a proper exercise of discretion." Commonwealth v. Braun, 74 Mass. App. Ct. at 905.

Indeed, part of the reason a voir dire has been held necessary in circumstances such as these is that "[u]ncertainty that a juror is asleep is not the equivalent of a finding that the juror is awake." Ibid. The judge's concerns about juror deliberations were appropriate, but, subsequent to the trial in this case, we have explained how to conduct a "sensitive" voir dire of the jurors about sleeping during trial without getting into questions about deliberations. As we explained in Commonwealth v. Dancy, 75 Mass. App. Ct. at 181, "the inquiry must," of course, "stay clear of the juror's personal recollections of the substance of the evidence he saw or observed. Inquiry into that area would inevitably reveal aspects of the juror's thought processes, thus entering an area

where judicial exploration is prohibited.  Instead, the inquiry should focus on how much of the evidence the juror has heard and witnessed and any impediments he or she may have to hearing and seeing the rest."  (Citation omitted.)

The Commonwealth puts forward an independent argument that reversal is unwarranted because there was no objection from the defendant to the failure to voir dire the jury.  In Dancy, we indicated that a sleeping juror was "a structural error . . . that so infringes on a defendant's right to the basic components of a fair trial that it can never be considered harmless."  75 Mass. App. Ct. at 182, quoting from Commonwealth v. Villanueva, 47 Mass. App. Ct. 905, 906 (1999).  And in Commonwealth v. Dyous, 79 Mass. App. Ct. 508, 512-514 (2011), we reversed in a case where the defendant did not object to the trial judge taking no action in the face of a report of a possibly sleeping juror, and neither party sought voir dire in the trial court.  Although structural rights may be waived -- even the right to a trial may be waived through a guilty plea colloquy -- Dyous stands for the proposition that, in the face of a judge's receipt of reliable information a juror was asleep, failure to request a voir dire is not sufficient to waive the protections that insure "the defendant's and the public's right" to a conscious jury.  Id. at 513.

Further, even if an objection were otherwise required, in the circumstances of this case we would not insist upon it.  The

prosecutor asked for a voir dire, and the defendant did not oppose the Commonwealth's motion. The judge ruled that he would not conduct a voir dire because he concluded that he could not do so without improperly invading the jury's deliberative process. In light of that reasoning, a further objection by the defendant would have been futile. At least in these circumstances -- where the judge had an opportunity to consider the question, the defendant did not oppose the voir dire, and the judge explained that he did not believe he could properly conduct a voir dire -- it would elevate form over substance to require the defendant to interpose a futile objection in order to preserve his rights. Cf. Commonwealth v. Vasquez, 456 Mass. 350, 357 n.9 & 358-359 (2010) (surveying futility jurisprudence and holding that "because an objection to the admission of a drug certificate would have been futile, the rationale for denying the defendant a more favorable standard of review is not applicable").

"Because there was no voir dire hearing and there were no findings establishing that the juror had been attentive and was capable of rendering a verdict based on all of the evidence, the defendant is entitled to the benefit of the doubt as to the juror's attentiveness and is therefore entitled to a new trial." Commonwealth v. Dyous, 79 Mass. App. Ct. at 514.

2.  Other issues.  a.  Our conclusion obviates the need to address most of the defendant's other claims.  We must, however, address the alleged insufficiency of the evidence to prove intent permanently to deprive the victim of his car at the time of the assault.  The evidence included the following:  The defendant's car was a "fully loaded" 1995 beige Acura Integra, described by the victim as a "high profile" car with custom paint, rims, and exhaust.  Prior to the alleged carjacking, the defendant, a passenger in a red vehicle driven by Steve Kenney, a friend of the victim in this case, left the red car, approached the victim outside a convenience store, and asked details about the car.  When the victim drove away from the convenience store, Kenney, at the defendant's instigation followed him.  And, immediately before the carjacking, when the Acura stopped in front of the house of a friend of the victim, the red car pulled up alongside it and Kenney asked the victim details about the vehicle, if it was for sale, and how much it was worth.  Given these questions showing interest in the car, the evidence with respect to intent permanently to deprive the victim of his car was sufficient under the familiar Latimore standard to support the defendant's conviction.  See Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

b.  As to the judge's allowing eighteen or nineteen prior convictions to be introduced for impeachment should the

defendant choose to testify, which the defendant asserts was an abuse of discretion, we trust that should there be a retrial the judge will be attentive to insure that convictions allowed for impeachment purposes will not present a risk that the jury will conclude that the defendant is of a criminal character, warranting punishment because of that character rather than because of the evidence at trial.

c. Finally, we must address an appeal from denial of a motion by the defendant seeking relief on the basis of undue delay in the appeal. The longest delay, from 2007 to 2010, which was apparently related to the ordering and production of transcripts, does not appear to have been the result of any intentional act. Commonwealth v. Swenson, 368 Mass. 268, 279-280 (1975) ("[D]eliberate blocking of appellate rights or inordinate and prejudicial delay without a defendant's consent, may rise to the level of constitutional error"). The defendant focuses his challenge on a stay of appeal obtained by the Commonwealth in 2013 to allow it to expand the record to include a document that was before the judge during sentencing and that was necessary to allow this court to understand the judge's ruling with respect to the use of prior convictions for impeachment. As to this delay, we cannot conclude, absent a showing that the procedure undertaken by the Commonwealth was designed deliberately to interpose a delay in the appeal, that,

as the defendant suggests, the Commonwealth was required to explain the relevance of the document to the defendant and to seek a stipulation to its inclusion in the record, rather than going through the formal procedure for expansion of the record. Consequently, the denial of the motion is affirmed.

_Judgments reversed_.

_Verdicts set aside_.

_Order denying motion to vacate convictions due to appellate delay affirmed_.