NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11716

COMMONWEALTH  vs.  CRAIG McGHEE.


Worcester.    December 1, 2014. - February 13, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Confining for Purpose of Stealing.  Jury and Jurors.  Practice,
Criminal, Jury and jurors, Conduct of juror.


Indictments found and returned in the Superior Court
Department on August 20, 2010.

The cases were tried before Richard T. Tucker, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Elizabeth Dembitzer for the defendant.
Brett F. Dillon, Assistant District Attorney (Donna-Marie
Haran, Assistant District Attorney, with him) for the
Commonwealth.


LENK, J.  The defendant appeals from his convictions on two

counts of "confin[ing] . . . or put[ting] any person in fear,

for the purpose of stealing from a building, bank, safe, vault

or other depository of money."  G. L. c. 265, § 21.  Evidence

was presented at trial that the defendant and another man intimidated victims into withdrawing funds from an automated teller machine (ATM) and handing those funds over to the defendant and the unidentified coventurer. The defendant argues that these facts do not support a finding that he had the purpose required by G. L. c. 265, § 21. We reject this argument. We agree, however, with the defendant's alternative assertion that the trial judge erred by failing to inquire into credible information that one of the jurors had slept through important portions of the evidence. Because this was a structural error, we vacate the defendant's convictions and remand for a new trial.

1. Background. The facts supported by the evidence at trial included the following. In May, 2010, the defendant and his coventurer accosted the victims, James Fletcher, Thomas Brown, and John Wentworth, as they were walking toward their vehicle in a Worcester parking lot. The defendant and his coventurer accused the victims, in a hostile and menacing manner, of being "up to trouble" and selling drugs. They then ordered the victims to get into the vehicle. The victims were frightened, and they cooperated with the defendant and his accomplice in the hope that they would not be hurt.

Fletcher drove. The defendant, who was aggressive and intermittently yelling, directed Fletcher to an ATM. The

defendant told Fletcher to get out of the vehicle, led Fletcher to the ATM, and ordered Fletcher to withdraw $150 from it. Fletcher was scared; he withdrew $140 and gave it to the defendant, stating that was all the money he had. The defendant said, "[T]hat's good enough." The defendant and Fletcher returned to the vehicle. While they had been gone, the coventurer had told Brown and Wentworth that the defendant would shoot them if they did not cooperate.

The coventurer then instructed Brown to get out of the vehicle. He grabbed Brown's arm and forced Brown toward the ATM. Brown withdrew twenty dollars and gave it to the coventurer, who told Brown to "get back in there" and to give him one hundred dollars. Brown testified that he complied, overdrawing his account in so doing. Brown and the coventurer returned to the vehicle. The defendant again directed Fletcher where to drive, and at some point the defendant and the coventurer got out of the vehicle.

Fletcher telephoned the Worcester police department that night and reported the incident in person the next day. The three victims subsequently identified the defendant from a photographic array.

The defendant was tried on three counts of aggravated kidnapping, G. L. c. 265, § 26; two counts of armed robbery, G. L. c. 265, § 17; and two counts of "confining to commit a

felony," G. L. c. 265, § 21.[1]  At the close of the Commonwealth's case, the defendant moved for required findings of not guilty as to all the charges.  The motion was denied.  The jury acquitted the defendant on all counts of aggravated kidnapping and armed robbery, and convicted him on the two counts of confining to commit a felony.  The defendant appealed, and we granted his application for direct appellate review.

2.  G. L. c. 265, § 21.  At the prosecution's request, the jury instructions concerning G. L. c. 265, § 21, were based on the first part of that statute,[2] which subjects to imprisonment

> "[w]hoever, with intent to commit larceny or any felony, confines, maims, injures or wounds, or attempts or threatens to kill, confine, maim, injure or wound, or puts any person in fear, for the purpose of stealing from a building, bank, safe, vault or other depository of money, bonds or other valuables . . . ."

The defendant argues that the evidence was insufficient to support a finding that the final requirement of this statute, namely, a "purpose of stealing from a building, bank, safe,

---

[1] The defendant was tried separately on charges of assault with intent to rob, G. L. c. 265, § 20, and assault and battery, G. L. c. 265, § 13A (a).  He also had been charged with unarmed robbery, G. L. c. 265, § 19 (b), and possession of cocaine, G. L. c. 94C, § 34, but the Commonwealth filed a nolle prosequi on these charges.

[2] The second part of G. L. c. 265, § 21, applies to whoever "by intimidation, force or threats compels or attempts to compel any person to disclose or surrender the means of opening any building, bank, safe, vault or other depository of money, bonds, or other valuables."

vault or other depository of money, bonds or other valuables," was satisfied. His argument is, in essence, that the phrase "stealing from" a "bank, safe, vault, or other depository" denotes, in this case, stealing property owned by the ATM. The evidence, according to the defendant, supported only a finding that the defendant had a purpose of stealing property owned by the victims, not the ATM.

"We review a question of statutory interpretation de novo . . . ." Commonwealth v. Perella, 464 Mass. 274, 276 (2013), quoting Commonwealth v. George W. Prescott Publ. Co., 463 Mass. 258, 264 n.9 (2012). "[C]riminal statutes must be construed strictly against the Commonwealth," but "[t]his does not mean that we read unambiguous statutory language to favor defendants; it means simply that . . . ambiguity must be resolved in favor of a defendant" (citations omitted). Commonwealth v. Ruiz, 426 Mass. 391, 394 (1998).

"[S]tatutes must be read as [a] whole to produce internal consistency." Commonwealth v. Perella, 464 Mass. at 279-280, citing Wheatley v. Massachusetts Insurers Insolvency Fund, 456 Mass. 594, 601 (2010), S.C., 465 Mass. 297 (2013). See Commonwealth v. Williamson, 462 Mass. 676, 681 (2012); Commonwealth v. Galvin, 388 Mass. 326, 328 (1983). Read as a whole, the "purpose of stealing" required by G. L. c. 265, § 21,

cannot reasonably be understood to be limited to stealing property owned by a bank or an ATM.

The purpose required by G. L. c. 265, § 21, encompasses not only theft from a bank or an ATM, but also theft from a "building," a "safe," or a "vault." A "building," in this context, includes a dwelling. See Commonwealth v. Devlin, 335 Mass. 555, 566-567 (1957); Commonwealth v. Skalberg, 333 Mass. 255, 255-256 (1955); Commonwealth v. Jackson, 37 Mass. App. Ct. 940, 941 (1994), quoting Black's Law Dictionary 194-195 (6th ed. 1990) (defining "building" as "a structure or edifice inclosing a space within its walls and usually . . . covered with a roof" [omission in original]). A person stealing "from" a building or a safe necessarily would not be stealing the property of a building or a safe. It is thus unambiguous that the phrase "stealing from" in G. L. c. 265, § 21, does not mean "stealing the property of." Rather, a purpose of stealing property "from" a location, in this context, indicates that the property was situated in that location when it was to be stolen. General Laws c. 265, § 21, thus admits of no ambiguity that need be resolved in the defendant's favor.

The defendant argues further, however, that his purpose, according to the evidence, also was not to steal property situated at the ATM. According to the defendant, the evidence showed that he had no intention of taking any money until after

it had been extracted from the ATM; by that time, the defendant argues, the money was to be located on the victims' persons, not at any of the locations enumerated in G. L. c. 265, § 21.

Several of the circuit courts of the United States Court of Appeals have reached conflicting conclusions when presented with analogous arguments under 18 U.S.C. § 2113(a) (2012), the Federal offense of bank robbery.[3]  Compare United States v. McCarter, 406 F.3d 460, 463 (7th Cir. 2005), overruled on other grounds, United States v. Parker, 508 F.3d 434 (7th Cir. 2007), with United States v. Burton, 425 F.3d 1008, 1010-1012 (5th Cir. 2005).  We share the view, articulated by the United States Court of Appeals for the Seventh Circuit, that "[i]f the depositor is robbed of the money he has just withdrawn after he leaves the bank, that is not a [robbery from the bank].  But if . . . the robber forces the bank's customer to withdraw the money, the customer becomes the unwilling agent of the robber . . . ."  United States v. McCarter, supra, citing United States v. Van, 814 F.2d 1004, 1006–1008 (5th Cir. 1987), and Embrey v. Hershberger, 131 F.3d 739 (8th Cir. 1997) (en banc),

---

[3] The pertinent part of 18 U.S.C. § 2113(a) (2012) applies to "[w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . ."

cert. denied, 525 U.S. 828 (1998).  See United States v. Durham, 645 F.3d 883, 893 (7th Cir. 2011), cert. denied, 132 S. Ct. 1537, 132 S. Ct. 1538 (2012); United States v. Smith, 670 F. Supp. 2d 1316, 1321 (M.D. Fla. 2009), aff'd, 385 F. App'x 977 (11th Cir. 2010).

In essence, the evidence indicated that the defendant's purpose was to steal money that was located in the ATM.  The fact that he planned to do so by forcing Fletcher to take the money out for him does not negate the existence of the purpose required by G. L. c. 265, § 21, just as this purpose would not have been undermined if the defendant had planned to have a confederate remove the money from the ATM.

3.  Sleeping juror.  On the first day of trial, testimony was taken from two of the three victims, Fletcher and Brown. The next morning, juror no. 6 (reporting juror) told a court officer that there had been an issue with juror no. 7 (identified juror) on the previous day.  The reporting juror was brought before the judge and the parties, and she provided the following account:

> "My concern was [that] through most of the morning proceedings I heard a lot of snoring going on; and I looked at the person, and the person wasn't paying any attention to the testimony going on.  After lunch when we came in, the snoring continued extremely loudly, to the point where it was interrupting me listening.  I kind of went like this [indicating] to the person next to me to show the person -- 'Look at this person,' and they were sound asleep through most of the afternoon trial."

Both the prosecutor and defense counsel stated that they had not noticed that a juror had been sleeping; but they both noted that they had not been focused on the jury. The reporting juror repeated that the woman next to her also had noticed the identified juror sleeping. The judge pointed out that "[s]ome people, when they concentrate, they close their eyes." The reporting juror responded:

> "I agree with that, and that's why I questioned it for a while. But when the snoring came; and there was one other thing that came after that. It was -- you know when you wake up after a nap, the head nod, the bad breath. That's what really hit me, was 'Wow, he's really sleeping there.'"

After hearing from the reporting juror, the judge said, "Maybe I should examine him," referring to the identified juror. The judge then explained, however, "I have questioned jurors before, if I've observed them [sleeping]. I haven't; so I'm kind of hesitant." The prosecutor said, "I think her description is fairly clear as to snoring. I think it may be something we want to ask." Defense counsel said, "I would ask that you inquire."

After hearing from the parties, the judge said, "Well, I would rather observe this individual now, and see what happens. If he looks like he's not paying attention, we can take steps right now." Defense counsel asked the defendant, who was

present at this discussion, "Are you okay with that . . . ?" to which the defendant responded, "I'm good."

At the end of the trial, the prosecutor stated that he had observed the identified juror "throughout the course of the trial, and he appeared to be awake and paying attention, taking notes." The judge remarked that he had tried to watch the identified juror but had not been able to because of the juror's position in the jury box. The judge added for the record, "[B]ecause of basically my failing to observe any sleepiness during the evidence, we have done nothing with him in that regard."

The defendant argues that the judge's failure to inquire into the identified juror's ability to deliberate and decide the case on the evidence was a structural error that necessitates a new trial. We agree.

Defendants, as well as the public, have "a right to decisions made by alert and attentive jurors." Commonwealth v. Beneche, 458 Mass. 61, 78 (2010), quoting Commonwealth v. Dancy, 75 Mass. App. Ct. 175, 181 (2009). Accordingly, "[a] judicial observation that a juror is asleep, or a judge's receipt of reliable information to that effect, requires prompt judicial intervention." Commonwealth v. Beneche, supra, quoting Commonwealth v. Dancy, supra.

It is true that "not every complaint regarding juror attentiveness requires a voir dire." Commonwealth v. Beneche, 458 Mass. at 78. See Commonwealth v. Braun, 74 Mass. App. Ct. 904, 905 (2009). Rather, if a judge receives a complaint or other information suggesting that a juror was asleep or otherwise inattentive, the judge must first determine whether that information is "reliable." See Commonwealth v. Beneche, supra, quoting Commonwealth v. Dancy, 75 Mass. App. Ct. at 181. In making this determination, the judge must consider the nature and source of the information presented, as well as any relevant facts that the judge has observed from the bench. See Commonwealth v. Morales, 453 Mass. 40, 47 (2009), citing Commonwealth v. Rzepphiewski, 431 Mass. 48, 54 (2000), and Commonwealth v. Keaton, 36 Mass. App. Ct. 81, 86-88 (1994).

If a judge reaches a preliminary conclusion that information about a juror's inattention is reliable, the judge must take further steps to determine the appropriate intervention. Typically, the next step is to conduct a voir dire of the potentially inattentive juror, in an attempt to investigate whether that juror "remains capable of fulfilling his or her obligation to render a verdict based on all of the evidence." See Commonwealth v. Dancy, 75 Mass. App. Ct. at 181. See also Commonwealth v. Wood, 469 Mass. 266, 281 (2014); Commonwealth v. Ray, 467 Mass. 115, 139 (2014); Commonwealth v.

Braun, 74 Mass. App. Ct. at 905.  Judges have substantial discretion in this area, however.  See Commonwealth v. Beneche, 458 Mass. at 78, quoting Commonwealth v. Dancy, 75 Mass. App. Ct. at 181.

The burden is on the defendant to show that the judge's response to information about a sleeping juror was "arbitrary or unreasonable."  See Commonwealth v. Beneche, 458 Mass. at 78, quoting Commonwealth v. Brown, 364 Mass. 471, 476 (1973).  See also Commonwealth v. Ray, 467 Mass. at 138-139.  The judge's decision can best be assessed if the judge makes a record of his or her findings, initially as to the reliability of the information presented, and subsequently -- if the judge finds the information reliable -- as to whether the juror in question was indeed asleep or inattentive, and what portions of the evidence the juror may have missed.  Cf. Commonwealth v. Dancy, 75 Mass. App. Ct. at 182 (where record did not reveal details of judge's observations concerning sleeping juror, record was to be developed by way of motion for new trial).

In the current case, the judge declined to conduct a voir dire of the identified juror, or to take any other steps to determine if that juror was fit to deliberate.  So far as the record reveals, the information relayed by the reporting juror showed reliably that the identified juror had slept through important portions of the trial.  The reporting juror stated

that the identified juror had been snoring loudly during the
portion of the trial at which two of the three victims
testified, and had later nodded his head as if awakening; a
third juror reportedly had confirmed the reporting juror's
observations.  There was no apparent cause to doubt the
reliability of this account.[4]  The judge's reason for taking no
further action, except to "observe [the identified juror] now,
and see what happens,"[5] was essentially that he had not himself
seen the juror sleeping.  But other reliable information besides
a judge's observations also "requires prompt judicial
intervention."  Commonwealth v. Beneche, 458 Mass. at 78,
quoting Commonwealth v. Dancy, 75 Mass. App. Ct. at 181.  See
Commonwealth v. Gonzalez, 86 Mass. App. Ct. 253, 255 (2014),

---

[4] On appeal, the Commonwealth suggests that the reliability
of the account offered by juror no. 6 (reporting juror) is
diminished by the fact that she spoke of juror no. 7 (identified
juror) sleeping through the "morning proceedings," when in fact
the jury was not sworn in until 12:21 P.M.  In context, however,
it is clear that the reporting juror referred to the session
that had preceded the jury's lunch break as the "morning
proceedings," and to the session that had followed the lunch
break as the "afternoon trial."

[5] The decision to observe the identified juror further was
not an effective response to information that the juror had been
sleeping.  If the identified juror missed important testimony on
the first day of the trial, it is unlikely that, even if he was
fully alert thereafter, he would "remain[] capable of fulfilling
his . . . obligation to render a verdict based on all of the
evidence."  See Commonwealth v. Dancy, 75 Mass. App. Ct. 175,
181 (2009).

quoting Commonwealth v. Braun, 74 Mass. App. Ct. at 905; Commonwealth v. Dyous, 79 Mass. App. Ct. 508, 513 n.4 (2011).

Because the judge conducted no further inquiry to determine whether and, if so, when the identified juror was sleeping, "there is serious doubt that the defendant received the fair trial to which he is constitutionally entitled."  See Commonwealth v. Braun, 74 Mass. App. Ct. at 906.  The serious possibility that a juror was asleep for a significant portion of the trial is "[a] structural error . . . that so infringes on a defendant's right to the basic components of a fair trial that it can never be considered harmless" (omission in original). Commonwealth v. Dancy, 75 Mass. App. Ct. at 182, quoting Commonwealth v. Villanueva, 47 Mass. App. Ct. 905, 906 (1999). See Commonwealth v. Gonzalez, 86 Mass. App. Ct. at 255-256; Commonwealth v. Dyous, 79 Mass. App. Ct. at 513-514; Commonwealth v. Braun, 74 Mass. App. Ct. at 905-906.[6]

---

[6] The Commonwealth notes that the defendant "expressly agreed to the judge's remedy."  As explained supra, the relevant sequence of events ran as follows:  the prosecutor suggested that the issue of the sleeping juror "may be something we want to ask"; defense counsel requested that the judge "inquire"; the judge stated that he "would rather observe this individual now, and see what happens"; and the defendant, when consulted by his attorney, stated, "I'm good."  In the circumstances, neither the defendant nor his counsel conveyed an intention to waive any right, as opposed to acquiescence in the judge's ruling.

4. <u>Conclusion</u>.  The defendant's convictions are vacated and set aside and the matter is remanded for a new trial.

<u>So ordered</u>.